Atty. No. 3122002

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHARLENE BROWN, individually and as )
mother of DEVONTA DAVIS, a minor, )

      Plaintiff, )

      vs. )

PLAINFIELD COMMUNITY CONSOLIDATED )
SCHOOL DISTRICT 202, JOHN HARPER, )
Superintendent of Plainfield Community )
Consolidated School District 202, BOARD OF )
EDUCATION OF PLAINFIELD  COMMUNITY )
CONSOLIDATED SCHOOL DISTRICT 202 and )
RON KAMZAR, MICHAEL KELLY, ROD )
WESTFALL, STUART BLEDSOE, ROGER )
BONUCHI, VICTORIA EGGERSTEDT and )
DAVE OBRZUT, as members of the BOARD OF )
EDUCATION OF PLAINFIELD COMMUNITY )
CONSOLIDATED SCHOOL DISTRICT 202, )
   )
      Defendants. )

07CV3873
JUDGE CASTILLO
MAG.JUDGE SCHENKIER

No.

**JURY DEMAND**

**FILED**

JUL 1 0 2007
7-10-07
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Now comes Plaintiff, Charlene Brown, individually and as mother of Devonta Davis, a minor, by Pinzur, Cohen and Kerr, Ltd., her attorneys, praying for a temporary restraining order, preliminary injunction, permanent injunction and damages against Defendants, Plainfield Community Consolidated School District 202, Board of Education of Plainfield Community Consolidated School District  202, Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt, and Dave Obrzut, as members of the Board of Education of Plainfield Community Consolidated School District 202 and John Harper, Superintendent of Plainfield Community Consolidated School District 202, and states:

## COUNT I - VIOLATION OF DUE PROCESS

1. Plaintiff, Charlene Brown (hereinafter referred to as "Plaintiff"), individually and as mother of Devonta Davis, a minor (hereinafter referred to as "Minor Plaintiff"), is a resident of Romeoville, Will County, Illinois.

2. Defendant, Plainfield Community Consolidated School District 202 (hereinafter referred to as "District 202"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North High School (hereinafter referred to as "Plainfield North").

3. Defendant, Board of Education of Plainfield Community Consolidated School District 202 (hereinafter referred to as the "Board"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North.

4. Defendant, Ron Kamzar, is a Member of the Board of Education of District 202.

5. Defendant, Michael Kelly, is a Member of the Board of Education of District 202.

6. Defendant, Rod Westfall, is a Member of the Board of Education of District 202.

7. Defendant, Stuart Bledsoe, is a Member of the Board of Education of District 202.

8. Defendant, Roger Bonuchi, is a Member of the Board of Education of District 202.

9. Defendant, Victoria Eggerstedt, is a Member of the Board of Education of District 202.

10. Defendant, Dave Obrzut, is a Member of the Board of Education of District 202.

11. Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt and Dave Obrzut collectively are the Board of Education of District 202 (hereinafter collectively referred to as "Board").

12. Defendant, John Harper, is the Superintendent of District 202.

13. Jurisdiction over the cause of action is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

14. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec.

2

1391(b), because the Defendants are located and/or reside in this District and a subsequent part of the claim giving rise to this cause of action occurred in this District.

15. At all relevant times herein, District 202 maintained and controlled Plainfield North High School (hereinafter referred to as "School"), located at 12005 South 248th Avenue, Plainfield, Will County, Illinois.

16. On or about April 23, 2007, Laura Moye (hereinafter referred to as "Moye") was an employee of District 202.

17. On or about April 23, 2007, Moye was employed by District 202 as a teacher at Plainfield North.

18. Moye was a first-year teacher during the 2006 - 2007 school year. *See*, Summary of Hearing, attached hereto and incorporated herein as Exhibit "A", Page 3.

19. Moye taught Computer Applications during the 2006 - 2007 school year.

20. On or about April 23, 2007, Minor Plaintiff was fourteen (14) years old.

21. During the 2006 - 2007 school year, Minor Plaintiff was a student at Plainfield North.

22. During the 2006 - 2007 school year, Minor Plaintiff was in the ninth (9th) grade, as a Freshman.

23. Minor Plaintiff was a student in Moye's Computer Applications class during said school year.

24. On or about April 23, 2007, Moye alleged she believed Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See*, Exhibit "A", Page 3.

25. Moye alleged she believed, the week prior to April 23, 2007, Minor Plaintiff brushed her buttocks with the back of his hand. *See*, Exhibit "A", Page 3.

26. Moye alleged she had not given the alleged first incident another thought until the alleged second incident allegedly occurred. *See*, Exhibit "A", Page 3.

27. Minor Plaintiff denied and continues to deny any such contact was made upon the person of Moye as alleged by Moye.

28. On or about May 2, 2007, a Disciplinary Hearing (hereinafter referred to as "Hearing") was conducted concerning the alleged conduct of Minor Plaintiff. *See*, Exhibit "A", Page 1.

29. Present at said Hearing were Minor Plaintiff, Plaintiff, Plaintiff's attorney, Robert S. Pinzur ("Pinzur"), of Pinzur, Cohen & Kerr, Ltd., District 202's attorney Paul Denham, Assistant Principal of School, Matt Ambrose, Dean of Students, Mark Hudson, Moye, and Moye's Department Chair, Robert Fritch. *See*, Exhibit "A", Page 1.

30. Minor Plaintiff and Plaintiff were not provided all documentary evidence that would be presented by Moye, District 202 or Plainfield North at said Hearing at a reasonable time prior to said Hearing.

31. Minor Plaintiff and Plaintiff were not provided a list of potential witnesses who would testify at said Hearing on behalf of Moye, District 202 or Plainfield North prior to said Hearing.

32. Minor Plaintiff and Plaintiff were not able to respond to the documentation presented by Moye, District 202 or Plainfield North nor given an opportunity to cross-examine the witnesses who provided written statements, because said witnesses were not present nor clearly identified at said Hearing. *See*, Student Statements, attached hereto and incorporated herein as Group Exhibit "B" (hereinafter referred to as "Statements").

33. Said Statements were admitted into evidence over objection of Plaintiff.

34. The authors of said Statements were not present at said Hearing.

35. Said Statements were not averred to by their authors.

36. Said Statements were not signed by their authors.

37. The identities of the authors of said Statements were not disclosed.

38. The Statements were not under oath.

39. At said Hearing, Moye testified to her "belie[f]" Davis intended to touch her buttocks on or about April 23, 2007. *See*, Exhibit "A", Page 4.

4

40.  On information and belief, the Plainfield North Student Handbook (hereinafter referred to as "Handbook") was purportedly distributed to all students at the beginning of the 2006 - 2007 school year. *See*, Plainfield North Student Handbook, attached hereto and incorporated herein as Exhibit "C", Page 45.

41.  On information and belief, all students attending Plainfield North signed receipts acknowledging they received a copy of said Handbook.

42.  The Handbook establishes all disciplinary procedures for the 2006 - 2007 school year, including procedures relating to the discipline of students for sexual harassment. *See*, Exhibit "C", Page 45.

43.  For a first time offender, said Handbook provides the penalty for sexual harassment of another individual is a suspension. *See*, Exhibit "C", Page 45.

44.  Pursuant to 105 ILCS 5/10-22.6 (hereinafter referred to as "Statute"), said suspension cannot exceed ten (10) days in duration.

45.  On or about May 14, 2007, following the alleged first time offense by Minor Plaintiff, in violation of the Handbook and Statute, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year.

46.  On or about May 17, 2007, the District 202 Director of Administration and Personnel, Mark Heiss, wrote Plaintiff correspondence stating Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year. *See*, May 17, 2007 correspondence to Charlene Brown from Mark Heiss (hereinafter referred to as "Correspondence"), attached hereto and incorporated herein as Exhibit "D".

47.  Said Correspondence stated Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year. *See*, Exhibit "D".

48.  Said Correspondence stated Minor Plaintiff was expelled by the Board because Minor Plaintiff "had been inappropriate with one of his teachers." *See*, Exhibit "D".

49.  This incident was Minor Plaintiff's first alleged sexual harassment offense.

50.  Minor Plaintiff had not been expelled previously or disciplined for previous conduct

classified as "sexual harassment".

51.    Pursuant to the Handbook, Minor Plaintiff, at worse, should have been suspended.

52.    Pursuant to Statute, said suspension could not exceed ten (10) days.

53.    In violation of the Handbook, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year.

54.    In violation of the Statute, the Board expelled Minor Plaintiff for a period in excess of ten (10) days.

55.    Minor Plaintiff was expelled without being afforded the opportunity to present evidence to the Board.

56.    As the direct and proximate cause of the expulsion, Minor Plaintiff has not attended school since on or about May 16, 2007.

57.    The right to an education is a property interest vested to Minor Plaintiff by Illinois Statute pursuant to the Illinois Constitution.

58.    Due to the expulsion, Minor Plaintiff has been denied his property interest to an education in derogation of his statutory and constitutional rights.

59.    Unless Defendants are immediately enjoined to reverse Minor Plaintiff's expulsion, Minor Plaintiff will be irreparably harmed by (among other things):

    A.    Damage to Minor Plaintiff's standing and association with the community.

    B.    Damage to Minor Plaintiff's personal reputation.

    C.    Damage to Minor Plaintiff's ability to obtain higher education should a college or university deny its acceptance of him on the basis of the Defendants' actions.

    D.    Denial of Minor Plaintiff's rights to an education and to complete his high school years in good standing.

    E.    Denial of Minor Plaintiff's rights to attend a Public High School in Plainfield, Illinois.

60.   In view of these and other considerations, Plaintiff has no adequate remedy at law.

61.   A balancing of the equities favors the issuance of an injunction in favor of Plaintiff
      and Minor Plaintiff and against Defendants District 202, Board, Ron Kamzar, Michael
      Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt, Dave
      Obrzut and John Harper.

62.   The injunctive relief Plaintiff requests would do no more than require Defendants to
      adhere to the dictates of the Handbook concerning the authority of the school to
      suspend and/or expel students and to refrain from engaging in actionable conduct.

63.   Expulsion of Minor Plaintiff has further caused damage to Minor Plaintiff's education
      and to his reputation.

64.   In light of the harm to Minor Plaintiff caused by the expulsion, equity compels that
      Defendants vacate or alternatively reverse and/or commute Minor Plaintiff's
      expulsion and expunge the same from his record and reinstate him as a student in
      good standing immediately.

65.   The Decision of the School Board to expel Minor Plaintiff was an abuse of discretion.

66.   The Decision of the School Board was against the manifest weight of evidence.

67.   The Decision of the School Board violated District 202's Handbook.

68.   The School Board's Decision discriminated against Minor Plaintiff based upon his
      race as an African American.

69.   Minor Plaintiff was treated different than other similarly situated students because of
      his race.

70.   The Decision of the School Board was arbitrary.

71.   The Decision of the School Board was unreasonable.

72.   The Decision of the School Board was capricious.

73.   The Decision of the School Board was oppressive.

74.   The Decision of the School Board was a gross injustice.

7

75. Plaintiff was denied the opportunity to present Plaintiff's case directly to the Board, the trier of fact.

76. The Hearing Officer was required to make a recommendation to the Board in his Report.

77. The Hearing Officer failed to make a recommendation to the Board in his Report.

78. An expulsion in excess of one year exceeds the authority of the Board under the alleged circumstances.

79. Plaintiff has incurred and will continue to incur substantial attorney fees and costs in this cause.

Wherefore, Plaintiff, Charlene Brown, individually and as mother of Devonta Davis, a minor, and Minor Plaintiff, Devonta Davis, respectfully request this Court:

A. Enter a permanent injunction requiring the Defendants to vacate and/or alternatively reverse their May 14, 2007 expulsion and to expunge the same from Minor Plaintiff's record and to immediately reinstate him as a student in good standing.

B. Award Plaintiff reasonable damages against the Defendants for his loss of constitutional rights.

C. Award Plaintiff damages against the Defendants in an amount sufficient to deter future constitutional violations.

D. Award Plaintiff reasonable attorney fees and costs incurred during this action.

E. Grant such other and further relief this Court deems just and appropriate.

## COUNT II- VIOLATION OF CIVIL RIGHTS

1. Plaintiff, Charlene Brown (hereinafter referred to as "Plaintiff"), individually and as mother of Devonta Davis, a minor (hereinafter referred to as "Minor Plaintiff"), is a resident of Romeoville, Will County, Illinois.

2. Defendant, Plainfield Community Consolidated School District 202 (hereinafter referred to as "District 202"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North High School (hereinafter referred to as "Plainfield North").

8

3.  Defendant, Board of Education of Plainfield Community Consolidated School District 202 (hereinafter referred to as the "Board"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North.

4.  Defendant, Ron Kamzar, is a Member of the Board of Education of District 202.

5.  Defendant, Michael Kelly, is a Member of the Board of Education of District 202.

6.  Defendant, Rod Westfall, is a Member of the Board of Education of District 202.

7.  Defendant, Stuart Bledsoe, is a Member of the Board of Education of District 202.

8.  Defendant, Roger Bonuchi, is a Member of the Board of Education of District 202.

9.  Defendant, Victoria Eggerstedt, is a Member of the Board of Education of District 202.

10. Defendant, Dave Obrzut, is a Member of the Board of Education of District 202.

11. Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt and Dave Obrzut collectively are the Board of Education of District 202 (hereinafter collectively referred to as "Board").

12. Defendant, John Harper, is the Superintendent of District 202.

13. Jurisdiction over the cause of action is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

14. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec. 1391(b), because the Defendants are located and/or reside in this District and a subsequent part of the claim giving rise to this cause of action occurred in this District.

15. At all relevant times herein, District 202 maintained and controlled Plainfield North High School (hereinafter "School"), located at 12005 South 248th Avenue, Plainfield, Will County, Illinois.

16. On or about April 23, 2007, Laura Moye (hereinafter referred to as "Moye") was an employee of District 202.

9

17.     On or about April 23, 2007, Moye was employed by District 202 as a teacher at Plainfield North.

18.     Moye was a first-year teacher during the 2006 - 2007 school year. *See*, Summary of Hearing, attached hereto and incorporated herein as Exhibit "A", Page 3.

19.     Moye taught Computer Applications during the 2006 - 2007 school year.

20.     On or about April 23, 2007, Minor Plaintiff was fourteen (14) years old.

21.     During the 2006 - 2007 school year, Minor Plaintiff was a student at Plainfield North.

22.     During the 2006 - 2007 school year, Minor Plaintiff was in the ninth (9th) grade, as a Freshman.

23.     Minor Plaintiff was a student in Moye's Computer Applications class during said school year.

24.     On or about April 23, 2007, Moye alleged she believed Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See*, Exhibit "A", Page 3.

25.     Moye alleged she believed, the week prior to April 23, 2007, Minor Plaintiff brushed her buttocks with the back of his hand. *See*, Exhibit "A", Page 3.

26.     Moye alleged she had not given the alleged first incident another thought until the alleged second incident allegedly occurred. *See*, Exhibit "A", Page 3.

27.     Minor Plaintiff denied and continues to deny any such contact was made upon the person of Moye as alleged by Moye.

28.     On or about May 2, 2007, a Disciplinary Hearing (hereinafter referred to as "Hearing") was conducted concerning the alleged conduct of Minor Plaintiff. *See*, Exhibit "A", Page 1.

29.     Present at said Hearing were Minor Plaintiff, Plaintiff, Plaintiff's attorney, Robert S. Pinzur ("Pinzur"), of Pinzur, Cohen & Kerr, Ltd., District 202's attorney, Paul Denham, Assistant Principal of School, Matt Ambrose, Dean of Students, Mark Hudson, Moye, and Moye's Department Chair Robert Fritch. *See*, Exhibit "A", Page 1.

30. Minor Plaintiff and Plaintiff were not provided all documentary evidence that would be presented by Moye, District 202 or Plainfield North at said Hearing at a reasonable time prior to said Hearing.

31. Minor Plaintiff and Plaintiff were not provided a list of potential witnesses who would testify at said Hearing on behalf of Moye, District 202 or Plainfield North prior to said Hearing.

32. Minor Plaintiff and Plaintiff were not able to respond to the documentation presented by Moye, District 202 or Plainfield North nor given an opportunity to cross-examine the witnesses who provided written statements, because said witnesses were not present nor clearly identified at said Hearing. *See*, Student Statements, attached hereto and incorporated herein as Group Exhibit "B" (hereinafter referred to as "Statements").

33. Said Statements were admitted into evidence over objection of Plaintiff.

34. The authors of said Statements were not present at said Hearing.

35. Said Statements were not averred to by their authors.

36. Said Statements were not signed by their authors.

37. The identities of the authors of said Statements were not disclosed.

38. The Statements were not under oath.

39. At said Hearing, Moye testified to her "belie[f]" Davis intended to touch her buttocks on or about April 23, 2007. *See*, Exhibit "A", Page 4.

40. On information and belief, the Plainfield North Student Handbook (hereinafter referred to as "Handbook") was purportedly distributed to all students at the beginning of the 2006 - 2007 school year. *See*, Plainfield North Student Handbook, attached hereto and incorporated herein as Exhibit "C", Page 45.

41. On information and belief, all students attending Plainfield North signed receipts acknowledging they received a copy of said Handbook.

42. The Handbook establishes all disciplinary procedures for the 2006-2007 school year, including procedures relating to the discipline of students for sexual harassment. *See*,

11

Exhibit "C", Page 45.

43. For a first time offender, said Handbook provides the penalty for sexual harassment of another individual is a suspension. *See*, Exhibit "C", Page 45.

44. Pursuant to 105 ILCS 5/10-22.6 (hereinafter referred to as "Statute"), said suspension cannot exceed ten (10) days in duration.

45. On or about May 14, 2007, following the alleged first time offense by Minor Plaintiff, in violation of the Handbook and Statute, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year.

46. On or about May 17, 2007, the District 202 Director of Administration and Personnel, Mark Heiss, wrote Plaintiff correspondence stating Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year. *See*, May 17, 2007 correspondence to Charlene Brown from Mark Heiss (hereinafter referred to as "Correspondence") attached hereto and incorporated herein as Exhibit "D".

47. Said Correspondence stated Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year. *See*, Exhibit "D".

48. Said Correspondence stated Minor Plaintiff was expelled by the Board because Minor Plaintiff "had been inappropriate with one of his teachers." *See*, Exhibit "D".

49. This incident was Minor Plaintiff's first alleged sexual harassment offense.

50. Minor Plaintiff had not been expelled previously or disciplined for previous conduct classified as "sexual harassment".

51. Pursuant to the Handbook, Minor Plaintiff, at worse, should have been suspended.

52. Pursuant to Statute, said suspension could not exceed ten (10) days.

53. In violation of the Handbook, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year.

54. In violation of the Statute, the Board expelled Minor Plaintiff for a period in excess

of ten (10) days.

55. Minor Plaintiff was expelled without being afforded the opportunity to present evidence to the Board.

56. As the direct and proximate cause of the expulsion, Minor Plaintiff has not attended school since on or about May 16, 2007.

57. The right to an education is a property interest vested to Minor Plaintiff by Illinois Statute pursuant to the Illinois Constitution.

58. Due to the expulsion, Minor Plaintiff has been denied his property interest to an education in derogation of his statutory and constitutional rights.

59. Unless Defendants are immediately enjoined to reverse Minor Plaintiff's expulsion, Minor Plaintiff will be irreparably harmed by (among other things):

   A. Damage to Minor Plaintiff's standing and association with the community.

   B. Damage to Minor Plaintiff's personal reputation.

   C. Damage to Minor Plaintiff's ability to obtain higher education should a college or university deny its acceptance of him on the basis of the Defendants' actions.

   D. Denial of Minor Plaintiff's rights to an education and to complete his high school years in good standing.

   E. Denial of Minor Plaintiff's rights to attend a Public High School in Plainfield, Illinois.

60. In view of these and other considerations, Plaintiff has no adequate remedy at law.

61. A balancing of the equities favors the issuance of an injunction in favor of Plaintiff and Minor Plaintiff and against Defendants District 202, Board, Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt, Dave Obrzut and John Harper.

62. The injunctive relief Plaintiff requests would do no more than require Defendants to adhere to the dictates of the Handbook concerning the authority of the school to

suspend and/or expel students and to refrain from engaging in actionable conduct.

63. Expulsion of Minor Plaintiff has further caused damage to Minor Plaintiff's education and to his reputation.

64. In light of the harm to Minor Plaintiff caused by the expulsion, equity compels that Defendants vacate or alternatively reverse and/or commute Minor Plaintiff's expulsion and expunge the same from his record and reinstate him as a student in good standing immediately.

65. An expulsion in excess of one year exceeds the authority of the Board under the alleged circumstances.

66. The Decision of the Board to expel Minor Plaintiff was an abuse of discretion.

67. The Decision of the Board was against the manifest weight of evidence.

68. The Decision of the Board violated District 202's Handbook.

69. The Board's Decision discriminated against Minor Plaintiff based upon his race as an African American.

70. Minor Plaintiff was treated different than other similarly situated students because of his race.

71. The Hearing Officer was required to make a recommendation to the Board in his Report.

72. The Hearing Officer failed to make a recommendation to the Board in his Report.

73. An expulsion in excess of one year exceeds the authority of the Board under the alleged circumstances.

74. Plaintiff has incurred and will continue to incur substantial attorney fees and costs in this cause.

Wherefore, Plaintiff, Charlene Brown, individually and as mother of Devonta Davis, a minor, and Minor Plaintiff, Devonta Davis, respectfully request this Court:

A. Enter a permanent injunction requiring the Defendants to vacate and/or alternatively

14

reverse their May 14, 2007 expulsion and to expunge the same from Minor Plaintiff's record and to immediately reinstate him as a student in good standing.

B.    Award Plaintiff reasonable damages against the Defendants for his loss of constitutional rights.

C.    Award Plaintiff damages against the Defendants in an amount sufficient to deter future constitutional violations.

D.    Award Plaintiff reasonable attorney fees and costs incurred during this action.

E.    Grant such other and further relief this Court deems just and appropriate.

## COUNT III - PRELIMINARY INJUNCTION

1.    Plaintiff, Charlene Brown (hereinafter referred to as "Plaintiff"), individually and as mother of Devonta Davis, a minor (hereinafter referred to as "Minor Plaintiff"), is a resident of Romeoville, Will County, Illinois.

2.    Defendant, Plainfield Community Consolidated School District 202 (hereinafter referred to as "District 202"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North High School (hereinafter referred to as "Plainfield North").

3.    Defendant, Board of Education of Plainfield Community Consolidated School District 202 (hereinafter referred to as the "Board"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North.

4.    Defendant, Ron Kamzar, is a Member of the Board of Education of District 202.

5.    Defendant, Michael Kelly, is a Member of the Board of Education of District 202.

6.    Defendant, Rod Westfall, is a Member of the Board of Education of District 202.

7.    Defendant, Stuart Bledsoe, is a Member of the Board of Education of District 202.

8.    Defendant, Roger Bonuchi, is a Member of the Board of Education of District 202.

9.    Defendant, Victoria Eggerstedt, is a Member of the Board of Education of District 202.

10.     Defendant, Dave Obrzut, is a Member of the Board of Education of District 202.

11.     Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt and Dave Obrzut collectively are the Board of Education of District 202 (hereinafter collectively referred to as "Board").

12.     Defendant, John Harper, is the Superintendent of District 202.

13.     Jurisdiction over the cause of action is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

14.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec. 1391(b), because the Defendants are located and/or reside in this District and a subsequent part of the claim giving rise to this cause of action occurred in this District.

15.     At all relevant times herein, District 202 maintained and controlled Plainfield North High School (hereinafter referred to as "School"), located at 12005 South 248th Avenue, Plainfield, Will County, Illinois.

16.     On or about April 23, 2007, Laura Moye (hereinafter referred to as "Moye") was an employee of District 202.

17.     On or about April 23, 2007, Moye was employed by District 202 as a teacher at Plainfield North.

18.     Moye was a first-year teacher during the 2006 - 2007 school year. *See*, Summary of Hearing, attached hereto and incorporated herein as Exhibit "A", Page 3.

19.     Moye taught Computer Applications during the 2006 - 2007 school year.

20.     On or about April 23, 2007, Minor Plaintiff was fourteen (14) years old.

21.     During the 2006 - 2007 school year, Minor Plaintiff was a student at Plainfield North.

22.     During the 2006 - 2007 school year, Minor Plaintiff was in the ninth (9th) grade, as a Freshman.

23.     Minor Plaintiff was a student in Moye's Computer Applications class during said school year.

24. On or about April 23, 2007, Moye alleged she believed Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See*, Exhibit "A", Page 3.

25. Moye alleged she believed, the week prior to April 23, 2007, Minor Plaintiff brushed her buttocks with the back of his hand. *See*, Exhibit "A", Page 3.

26. Moye alleged she had not given the alleged first incident another thought until the alleged second incident allegedly occurred. *See*, Exhibit "A", Page 3.

27. Minor Plaintiff denied and continues to deny any such contact was made upon the person of Moye as alleged by Moye.

28. On or about May 2, 2007, a Disciplinary Hearing (hereinafter referred to as "Hearing") was conducted concerning the alleged conduct of Minor Plaintiff. *See*, Exhibit "A", Page 1.

29. Present at said Hearing were Minor Plaintiff, Plaintiff, Plaintiff's attorney, Robert S. Pinzur ("Pinzur"), of Pinzur, Cohen & Kerr, Ltd., District 202's attorney Paul Denham, Assistant Principal of School, Matt Ambrose, Dean of Students, Mark Hudson, Moye, and Moye's Department Chair, Robert Fritch. *See*, Exhibit "A", Page 1.

30. Minor Plaintiff and Plaintiff were not provided all documentary evidence that would be presented by Moye, District 202 or Plainfield North at said Hearing at a reasonable time prior to said Hearing.

31. Minor Plaintiff and Plaintiff were not provided a list of potential witnesses who would testify at said Hearing on behalf of Moye, District 202 or Plainfield North prior to said Hearing.

32. Minor Plaintiff and Plaintiff were not able to respond to the documentation presented by Moye, District 202 or Plainfield North nor given an opportunity to cross-examine the witnesses who provided written statements, because said witnesses were not present nor clearly identified at said Hearing. *See*, Student Statements, attached hereto and incorporated herein as Group Exhibit "B" (hereinafter referred to as "Statements").

33. Said Statements were admitted into evidence over objection of Plaintiff.

34. The authors of said Statements were not present at said Hearing.

17

35. Said Statements were not averred to by their authors.

36. Said Statements were not signed by their authors.

37. The identities of the authors of said Statements were not disclosed.

38. The Statements were not under oath.

39. At said Hearing, Moye testified to her "belie[f]" Davis intended to touch her buttocks on or about April 23, 2007. *See*, Exhibit "A", Page 4.

40. On information and belief, the Plainfield North Student Handbook (hereinafter referred to as "Handbook") was purportedly distributed to all students at the beginning of the 2006 - 2007 school year. *See*, Plainfield North Student Handbook, attached hereto and incorporated herein as Exhibit "C", Page 45.

41. On information and belief, all students attending Plainfield North signed receipts acknowledging they received a copy of said Handbook.

42. The Handbook establishes all disciplinary procedures for the 2006 - 2007 school year, including procedures relating to the discipline of students for sexual harassment. *See*, Exhibit "C", Page 45.

43. For a first time offender, said Handbook provides the penalty for sexual harassment of another individual is a suspension. *See*, Exhibit "C", Page 45.

44. Pursuant to 105 ILCS 5/10-22.6 (hereinafter referred to as "Statute"), said suspension cannot exceed ten (10) days in duration.

45. On or about May 14, 2007, following the alleged first time offense by Minor Plaintiff, in violation of the Handbook and Statute, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year.

46. On or about May 17, 2007, the District 202 Director of Administration and Personnel, Mark Heiss, wrote Plaintiff correspondence stating Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year. *See*, May 17, 2007 correspondence to Charlene Brown from Mark Heiss (hereinafter referred to as "Correspondence"), attached hereto and incorporated herein as Exhibit "D".

47.   Said Correspondence stated Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year. *See*, Exhibit "D".

48.   Said Correspondence stated Minor Plaintiff was expelled by the Board because Minor Plaintiff "had been inappropriate with one of his teachers." *See*, Exhibit "D".

49.   This incident was Minor Plaintiff's first alleged sexual harassment offense.

50.   Minor Plaintiff had not been expelled previously or disciplined for previous conduct classified as "sexual harassment".

51.   Pursuant to the Handbook, Minor Plaintiff, at worse, should have been suspended.

52.   Pursuant to Statute, said suspension could not exceed ten (10) days.

53.   In violation of the Handbook, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year.

54.   In violation of the Statute, the Board expelled Minor Plaintiff for a period in excess of ten (10) days.

55.   Minor Plaintiff was expelled without being afforded the opportunity to present evidence to the Board.

56.   As the direct and proximate cause of the expulsion, Minor Plaintiff has not attended school since on or about May 16, 2007.

57.   The right to an education is a property interest vested to Minor Plaintiff by Illinois Statute pursuant to the Illinois Constitution.

58.   Due to the expulsion, Minor Plaintiff has been denied his property interest to an education in derogation of his statutory and constitutional rights.

59.   Unless Defendants are immediately enjoined to reverse Minor Plaintiff's expulsion, Minor Plaintiff will be irreparably harmed by (among other things):

   A.   Damage to Minor Plaintiff's standing and association with the community.

   B.   Damage to Minor Plaintiff's personal reputation.

C.    Damage to Minor Plaintiff's ability to obtain higher education should a college or university deny its acceptance of him on the basis of the Defendants' actions.

D.    Denial of Minor Plaintiff's rights to an education and to complete his high school years in good standing.

E.    Denial of Minor Plaintiff's rights to attend a Public High School in Plainfield, Illinois.

60.    In view of these and other considerations, Plaintiff has no adequate remedy at law.

61.    A balancing of the equities favors the issuance of an injunction in favor of Plaintiff and Minor Plaintiff and against Defendants District 202, Board, Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt, Dave Obrzut and John Harper.

62.    The injunctive relief Plaintiff requests would do no more than require Defendants to adhere to the dictates of the Handbook concerning the authority of the school to suspend and/or expel students and to refrain from engaging in actionable conduct.

63.    Expulsion of Minor Plaintiff has further caused damage to Minor Plaintiff's education and to his reputation.

64.    In light of the harm to Minor Plaintiff caused by the expulsion, equity compels that Defendants vacate or alternatively reverse and/or commute Minor Plaintiff's expulsion and expunge the same from his record and reinstate him as a student in good standing immediately.

65.    The Decision of the Board to expel Minor Plaintiff was an abuse of discretion.

66.    The Decision of the Board was against the manifest weight of evidence.

67.    The Decision of the Board violated District 202's Handbook.

68.    The Board's Decision discriminated against Minor Plaintiff based upon his race as an African American.

69.    Minor Plaintiff was treated different than other similarly situated students because of his race.

20

70.     Plaintiff has incurred and will continue to incur substantial attorney fees and costs in this cause.

71.     An expulsion in excess of one year exceeds the authority of the Board under the alleged circumstances.

72.     The Hearing Officer was required to make a recommendation to the Board in his Report.

73.     The Hearing Officer failed to make a recommendation to the Board in his Report.

74.     Plaintiff seeks a preliminary injunction and respectfully requests a hearing be held before the start of the 2007 - 2008 school year or the Court enter an Order preserving the *status quo* prior to expulsion until such a hearing can occur.

75.     Minor Plaintiff will suffer substantial and immediate irreparable injury unless Defendants are restrained from expelling Minor Plaintiff pending a decision on Plaintiff and Minor Plaintiff's Complaint.

76.     Defendants will not be harmed by the issuance of a Preliminary Injunction.

77.     The issuance of a Preliminary Injunction will preserve the *status quo* prior to the expulsion and will protect the interests of all concerned.

78.     Plaintiff and Minor Plaintiff have a substantial likelihood of succeeding on the merits of Plaintiff's and Minor Plaintiff's due process claim, as stated in Count I of this Complaint.

Wherefore, Plaintiff, Charlene Brown, individually and as mother of Devonta Davis, a minor, and Minor Plaintiff, Devonta Davis, respectfully request this Court:

A.      Enter a preliminary injunction requiring the Defendants to vacate and/or alternatively reverse their May 14, 2007 expulsion and to expunge the same from Minor Plaintiff's record and to immediately reinstate him as a student in good standing.

B.      Award Plaintiff reasonable damages against the Defendants for his loss of constitutional rights.

C.      Award Plaintiff damages against the Defendants in an amount sufficient to deter future constitutional violations.

21

D.     Award Plaintiff reasonable attorney fees and costs incurred during this action.

E.     Grant such other and further relief this Court deems just and appropriate.

## COUNT IV - TEMPORARY RESTRAINING ORDER

1.     Plaintiff, Charlene Brown (hereinafter referred to as "Plaintiff"), individually and as mother of Devonta Davis, a minor (hereinafter referred to as "Minor Plaintiff"), is a resident of Romeoville, Will County, Illinois.

2.     Defendant, Plainfield Community Consolidated School District 202 (hereinafter referred to as "District 202"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North High School (hereinafter referred to as "Plainfield North").

3.     Defendant, Board of Education of Plainfield Community Consolidated School District 202 (hereinafter referred to as the "Board"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North.

4.     Defendant, Ron Kamzar, is a Member of the Board of Education of District 202.

5.     Defendant, Michael Kelly, is a Member of the Board of Education of District 202.

6.     Defendant, Rod Westfall, is a Member of the Board of Education of District 202.

7.     Defendant, Stuart Bledsoe, is a Member of the Board of Education of District 202.

8.     Defendant, Roger Bonuchi, is a Member of the Board of Education of District 202.

9.     Defendant, Victoria Eggerstedt, is a Member of the Board of Education of District 202.

10.     Defendant, Dave Obrzut, is a Member of the Board of Education of District 202.

11.     Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt and Dave Obrzut collectively are the Board of Education of District 202 (hereinafter collectively referred to as "Board").

12.     Defendant, John Harper, is the Superintendent of District 202.

13. Jurisdiction over the cause of action is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

14. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec. 1391(b), because the Defendants are located and/or reside in this District and a subsequent part of the claim giving rise to this cause of action occurred in this District.

15. At all relevant times herein, District 202 maintained and controlled Plainfield North High School (hereinafter referred to as "School"), located at 12005 South 248th Avenue, Plainfield, Will County, Illinois.

16. On or about April 23, 2007, Laura Moye (hereinafter referred to as "Moye") was an employee of District 202.

17. On or about April 23, 2007, Moye was employed by District 202 as a teacher at Plainfield North.

18. Moye was a first-year teacher during the 2006 - 2007 school year. *See*, Summary of Hearing, attached hereto and incorporated herein as Exhibit "A", Page 3.

19. Moye taught Computer Applications during the 2006 - 2007 school year.

20. On or about April 23, 2007, Minor Plaintiff was fourteen (14) years old.

21. During the 2006 - 2007 school year, Minor Plaintiff was a student at Plainfield North.

22. During the 2006 - 2007 school year, Minor Plaintiff was in the ninth (9th) grade, as a Freshman.

23. Minor Plaintiff was a student in Moye's Computer Applications class during said school year.

24. On or about April 23, 2007, Moye alleged she believed Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See*, Exhibit "A", Page 3.

25. Moye alleged she believed, the week prior to April 23, 2007, Minor Plaintiff brushed her buttocks with the back of his hand. *See*, Exhibit "A", Page 3.

26. Moye alleged she had not given the alleged first incident another thought until the

23

alleged second incident allegedly occurred. *See*, Exhibit "A", Page 3.

27. Minor Plaintiff denied and continues to deny any such contact was made upon the person of Moye as alleged by Moye.

28. On or about May 2, 2007, a Disciplinary Hearing (hereinafter referred to as "Hearing") was conducted concerning the alleged conduct of Minor Plaintiff. *See*, Exhibit "A", Page 1.

29. Present at said Hearing were Minor Plaintiff, Plaintiff, Plaintiff's attorney, Robert S. Pinzur ("Pinzur"), of Pinzur, Cohen & Kerr, Ltd., District 202's attorney Paul Denham, Assistant Principal of School, Matt Ambrose, Dean of Students, Mark Hudson, Moye, and Moye's Department Chair, Robert Fritch. *See*, Exhibit "A", Page 1.

30. Minor Plaintiff and Plaintiff were not provided all documentary evidence that would be presented by Moye, District 202 or Plainfield North at said Hearing at a reasonable time prior to said Hearing.

31. Minor Plaintiff and Plaintiff were not provided a list of potential witnesses who would testify at said Hearing on behalf of Moye, District 202 or Plainfield North prior to said Hearing.

32. Minor Plaintiff and Plaintiff were not able to respond to the documentation presented by Moye, District 202 or Plainfield North nor given an opportunity to cross-examine the witnesses who provided written statements, because said witnesses were not present nor clearly identified at said Hearing. *See*, Student Statements, attached hereto and incorporated herein as Group Exhibit "B" (hereinafter referred to as "Statements").

33. Said Statements were admitted into evidence over objection of Plaintiff.

34. The authors of said Statements were not present at said Hearing.

35. Said Statements were not averred to by their authors.

36. Said Statements were not signed by their authors.

37. The identities of the authors of said Statements were not disclosed.

24

38.  The Statements were not under oath.

39.  At said Hearing, Moye testified to her "belie[f]" Davis intended to touch her buttocks on or about April 23, 2007. *See*, Exhibit "A", Page 4.

40.  On information and belief, the Plainfield North Student Handbook (hereinafter referred to as "Handbook") was purportedly distributed to all students at the beginning of the 2006 - 2007 school year. *See*, Plainfield North Student Handbook, attached hereto and incorporated herein as Exhibit "C", Page 45.

41.  On information and belief, all students attending Plainfield North signed receipts acknowledging they received a copy of said Handbook.

42.  The Handbook establishes all disciplinary procedures for the 2006 - 2007 school year, including procedures relating to the discipline of students for sexual harassment. *See*, Exhibit "C", Page 45.

43.  For a first time offender, said Handbook provides the penalty for sexual harassment of another individual is a suspension. *See*, Exhibit "C", Page 45.

44.  Pursuant to 105 ILCS 5/10-22.6 (hereinafter referred to as "Statute"), said suspension cannot exceed ten (10) days in duration.

45.  On or about May 14, 2007, following the alleged first time offense by Minor Plaintiff, in violation of the Handbook and Statute, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year.

46.  On or about May 17, 2007, the District 202 Director of Administration and Personnel, Mark Heiss, wrote Plaintiff correspondence stating Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year. *See*, May 17, 2007 correspondence to Charlene Brown from Mark Heiss (hereinafter referred to as "Correspondence"), attached hereto and incorporated herein as Exhibit "D".

47.  Said Correspondence stated Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year. *See*, Exhibit "D".

48.  Said Correspondence stated Minor Plaintiff was expelled by the Board because Minor

25

Plaintiff "had been inappropriate with one of his teachers." *See*, Exhibit "D".

49. This incident was Minor Plaintiff's first alleged sexual harassment offense.

50. Minor Plaintiff had not been expelled previously or disciplined for previous conduct classified as "sexual harassment".

51. Pursuant to the Handbook, Minor Plaintiff, at worse, should have been suspended.

52. Pursuant to Statute, said suspension could not exceed ten (10) days.

53. In violation of the Handbook, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year.

54. In violation of the Statute, the Board expelled Minor Plaintiff for a period in excess of ten (10) days.

55. Minor Plaintiff was expelled without being afforded the opportunity to present evidence to the Board.

56. As the direct and proximate cause of the expulsion, Minor Plaintiff has not attended school since on or about May 16, 2007.

57. The right to an education is a property interest vested to Minor Plaintiff by Illinois Statute pursuant to the Illinois Constitution.

58. Due to the expulsion, Minor Plaintiff has been denied his property interest to an education in derogation of his statutory and constitutional rights.

59. Unless Defendants are immediately enjoined to reverse Minor Plaintiff's expulsion, Minor Plaintiff will be irreparably harmed by (among other things):

A. Damage to Minor Plaintiff's standing and association with the community.

B. Damage to Minor Plaintiff's personal reputation.

C. Damage to Minor Plaintiff's ability to obtain higher education should a college or university deny its acceptance of him on the basis of the Defendants' actions.

D.    Denial of Minor Plaintiff's rights to an education and to complete his high school years in good standing.

E.    Denial of Minor Plaintiff's rights to attend a Public High School in Plainfield, Illinois.

60.    In view of these and other considerations, Plaintiff has no adequate remedy at law.

61.    A balancing of the equities favors the issuance of an injunction in favor of Plaintiff and Minor Plaintiff and against Defendants District 202, Board, Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt, Dave Obrzut and John Harper.

62.    The injunctive relief Plaintiff requests would do no more than require Defendants to adhere to the dictates of the Handbook concerning the authority of the school to suspend and/or expel students and to refrain from engaging in actionable conduct.

63.    Expulsion of Minor Plaintiff has further caused damage to Minor Plaintiff's education and to his reputation.

64.    In light of the harm to Minor Plaintiff caused by the expulsion, equity compels that Defendants vacate or alternatively reverse and/or commute Minor Plaintiff's expulsion and expunge the same from his record and reinstate him as a student in good standing immediately.

65.    The Decision of the Board to expel Minor Plaintiff was an abuse of discretion.

66.    The Decision of the Board was against the manifest weight of evidence.

67.    The Decision of the Board violated District 202's Handbook.

68.    The Board's Decision discriminated against Minor Plaintiff based upon his race as an African American.

69.    Minor Plaintiff was treated different than other similarly situated students because of his race.

70.    An expulsion in excess of one year exceeds the authority of the Board under the alleged circumstances.

71.    The Hearing Officer was required to make a recommendation to the Board in his

27

Report.

72. The Hearing Officer failed to make a recommendation to the Board in his Report.

73. An expulsion in excess of one year exceeds the authority of the Board under the alleged circumstances.

74. Plaintiff has incurred and will continue to incur substantial attorney fees and costs in this cause.

75. Plaintiff seeks a Temporary Restraining Order and respectfully requests a hearing be held before the start of the 2007 - 2008 school year or the Court enter an Order preserving the *status quo* prior to expulsion until such a hearing can occur.

76. Minor Plaintiff will suffer substantial and immediate irreparable injury unless Defendants are restrained from expelling Minor Plaintiff pending a decision on Plaintiff and Minor Plaintiff's Complaint.

77. Defendants will not be harmed by the issuance of a Temporary Restraining Order.

78. The issuance of a Temporary Restraining Order will preserve the *status quo* prior to the expulsion and will protect the interests of all concerned.

79. Plaintiff and Minor Plaintiff have a substantial likelihood of succeeding on the merits of Plaintiff's and Minor Plaintiff's due process claim, as stated in Count I of this Complaint.

Wherefore, Plaintiff, Charlene Brown, individually and as mother of Devonta Davis, a minor, and Minor Plaintiff, Devonta Davis, respectfully request this Court:

A. Enter a Temporary Restraining Order requiring the Defendants to vacate and/or alternatively reverse their May 14, 2007 expulsion and to expunge the same from Minor Plaintiff's record and to immediately reinstate him as a student in good standing.

B. Award Plaintiff reasonable damages against the Defendants for his loss of constitutional rights.

C. Award Plaintiff damages against the Defendants in an amount sufficient to deter future constitutional violations.

28

D.    Award Plaintiff reasonable attorney fees and costs incurred during this action.

E.    Grant such other and further relief this Court deems just and appropriate.

*Robert E. Pinzur*

Pinzur, Cohen & Kerr, Ltd.

Pinzur, Cohen & Kerr, Ltd.
Attorney No.: 3122002
Attorney for Plaintiff
Suite 208
4180 RFD Route 83
Long Grove, IL 60047
847/821-5290
847/821-5293 (fax)

**VERIFICATION**

Charlene Brown, on oath and under penalty of perjury as provided by law pursuant to 735 ILCS 5/1-109, states she has read the foregoing pleading and it is true and accurate to her best knowledge and belief.

Charlene Brown

Pinzur, Cohen & Kerr, Ltd.
Attorney No.: 3122002
Attorney for Plaintiff
Suite 208
4180 RFD Route 83
Long Grove, IL 60047
847/821-5290
847/821-5293 (fax)

30

MAY-22-2007 07:28 Case: 1:07-cv-03873 Document #: 1 Filed: 07/10/07 Page 31 of 50 PageID #:31 02/10
FRANCZEK SULLIVAN P C 3125689872

FROM :                          FAX NO. :8152304551            May. 22 2007 07:28AM P2

**EXHIBIT____A____**

## SUMMARY OF HEARING

A disciplinary hearing was conducted on May 2, 2007 concerning Devonta Davis, a fourteen year old freshman at Plainfield North High School. Devonta was accompanied to the hearing by his mother, Charlene Brown and their attorney, Robert Pinzur. The administration was represented by Assistant Principal Matt Ambrose and Dean Mark Hudson and the district's attorney, Paul Denham. Also present were Laura Moye, a business teacher and Robert Fritch, her department chair.

On April 24, 2007, Business Department chair Robert Fritch advised Assistant Principal Matt Ambrose that Devonta Davis may have been inappropriate with one of his teachers, Laura Moye, during her sixth period computer class the day before (April 23). At the request of Mr. Ambrose, Ms. Moye prepared a statement, which led to the administration's investigation and, eventually, the hearing of May 2, 2007.

Ms. Moye's statement is included in the packet at tab 9. She relates two instances in the days prior to April 24, 2007 in which Devonta walked past her in the computer lab, both times with the back of his hand brushing across her bottom. She relates that the first instance was ignored by her because she assumed it was a mistake and was the sort of thing that would happen when students are retrieving papers from the printer and the aisles get crowded.

When the same thing happened again on April 23, 2007, Ms. Moye became concerned. In part, she believes that the second incident could not have been a mistake because there was more than sufficient room (four feet) for Devonta to pass without coming into contact with her. Her suspicion that something more than mere accident was in play was heightened when, later that same class period, she observed Devonta and one of his friends talking and continuing to look up at her while doing so.

After the class on April 23, 2007 ended, Ms. Moye spoke with a female student who sat near Devonta and the friend with whom Devonta had been speaking. Ms. Moye inquired if the female student had overheard the conversation between Devonta and the other student and if it was about Ms. Moye. The student told Ms. Moye that she didn't overhear that conversation, but added that the week prior, Devonta had mentioned that Ms. Moye "had a nice butt" when she bent down to pick up a piece of paper. The female student also reported that during that same week, Devonta made a comment when Ms. Moye stood on the counter top to adjust the ceiling-mounted projector as well.

Devonta was called to the office to discuss the matter. Devonta did not remember brushing up against Ms. Moye on any occasion. Devonta declined to prepare a written statement, saying that his mother forbade him from writing anything down without her being present. When Dean Hudson learned this, he called Devonta's mother, Charlene Brown, who confirmed that she had given her son those instructions. Ms. Brown made arrangements to come to the school later that day.

Devonta Davis
May 2, 2007 Hearing Report
Page 2

When Ms. Brown arrived, Dean Hudson discussed the situation with Devonta and his
mother. Because Ms. Brown declined to permit Devonta to write anything, Dean Hudson
took notes of Devonta's responses and prepared the page at tab 8. In essence, Devonta
stated that he did, in fact, retrieve a piece of paper from the printer and that when he
turned to enter the aisle, Ms. Moye was exiting it. Devonta did not recall any contact
with Ms. Moye at that time and he also denied saying anything to another student in the
classroom.

Students identified as "A" "B" and "C" provided statements to Mr. Hudson. The letters
assigned to the students correspond to the locations of the students with the same letter
labels in the drawing prepared by Mr. Hudson that is at tab 8. Student A reported hearing
Devonta say "Hey, Chris, Ms. Moye looks fine today, doesn't she?" Student B provided
no quotes, but recalled Devonta commenting on how good Ms. Moye looked and how she
was his wife. Student B also reported that Devonta used to talk about how sexy Ms.
Moye was, but added that he also frequently used street talk that Student B didn't
understand. Student C recalled Devonta commenting that Ms. Moye was sexy, had a big
butt, a nice body and that he wanted to take her out on a date. Student C also recalled
Devonta expressing hope that Ms. Moye didn't have a boyfriend.

The administration's presentation concluded with the walk-through of the hearing packet,
with Dean Hudson describing each of the other documents in the packet. Virtually every
document drew an objection from Devonta's attorney, the summary of which is provided
in the attached table.

**Charlene Brown**, Devonta's mother, testified first for the defense. Her testimony was
primarily focused on three areas: her upbringing of, and expectations for Devonta; a
prior discipline incident; and the suspension notice and expulsion hearing letters.

With regard to the letters, Ms. Brown testified that she never received them. When she
initially reported this to Mark Hudson, he placed a duplicate copy in the folder with
Devonta's homework, but it appears that the homework bag was not picked up. It
appears that there may have been other communication between Mr. Hudson and Ms.
Brown regarding both the setting of the hearing, the fact of Devonta's suspension and
Ms. Brown's non-receipt of the letters. The hearing officer did not believe the issue
needed to be cleared up since Devonta's attorney advised that he did receive copies of
both letters from the administration immediately upon requesting a fax of the same.
More importantly, Devonta's counsel advised that he had no objection to proceeding with
the hearing as scheduled.

Ms. Brown testified that outside of school, Devonta was devoted to sports and athletics of
all sorts and is active in the teen ministry at his church, along with other church-related
activities. She denied ever receiving reports or complaints concerning inappropriate
behavior by Devonta.

MAY-22-2007 07:28 FRANCZEK SULLIVAN P C 3129888940 P.04/10

FROM : FAX NO. :8152304551 May. 22 2007 07:29AM P4

Devonta Davis
May 2, 2007 Hearing Report
Page 3

Regarding the past discipline matter, Ms. Brown testified that she was aware that
Devonta had asked a friend if a rumor he heard was true, which led to Devonta being
disciplined. It is apparent that Ms. Brown believes that Devonta was wrongly disciplined
for the incident. Ms. Brown explained that her understanding of the situation was that
Devonta had heard a rumor from a friend about a girl that both students knew. The rumor
was that the girl "gave good head" and Devonta asked her if that was true, and if not, why
was "Mike" saying it and why not take it to a Dean. Ms. Brown's understanding is that
the girl became upset with Devonta for asking about the situation and instead of going to
the Dean about the other student, complained to the Dean about Devonta.

Ms. Brown further explained that after the incident, she met with the Principal and others
about that situation. It was Ms. Brown's position that the entire incident was a
misunderstanding since it was Devonta who was trying to help the girl, not discuss or
pass along the rumor. Following that discussion, the Principal agreed to reclassify the
incident as one of merely "inappropriate language" rather than sexual harassment.

Dean **Mark Hudson** was next examined by Devonta's counsel. He acknowledged that
being a fourteen year old boy can be difficult and that boys of that age can, and are,
intrigued by chatter about sexual matters.

Ms. **Laura Moye** was next questioned. She acknowledged that Devonta does well in
class, works hard and helps others who need it. She previously had a problem with
Devonta last semester in which he would be speaking at inappropriate times. That
situation was addressed by Devonta's mother.

Ms. Moye acknowledged that she is a first year teacher. She rebuffed counsel's several
attempts to suggest that she misunderstood or mistook the incident. One particular line of
questioning concerned other instances in her life in which she had been bumped or
touched by others. Ms. Moye testified that she did not recall much, if anything, in terms
of the specifics of other such incidents. She insisted that the two incidents with Devonta,
particularly the more recent one, were "different" from those other instances. She could
not specify in detail what made them different, other than that they "felt" different to her
and produced a different feeling on her part. As part of the explanation, she pointed out
that in most of the other circumstances, there would be a touching of some sort that
would be immediately followed by an apology or other utterance. Later, she added that
the location of the touching, which she located hear the bottom of her buttocks, did not
seem to her to be an area that would likely be accidentally contacted.

Another line of questioning concerned counsel's effort to establish that Ms. Moye had
simply mistaken the situation. In that area of questioning, Ms. Moye acknowledged that
if the second incident had not occurred, she would never have given the first incident
another thought. She declined to admit even that it was "possible" that she was mistaken
regarding the second incident, both because of the availability of substantial space for
Devonta to pass without contact and the subsequent conversation she observed between

Devonta Davis
May 2, 2007 Hearing Report
Page 4

Devonta and Devonta's friend in class that included both of them frequently looking at her after the incident occurred.

Ms. Moye denied that there was any laughter or outburst in the room after Devonta brushed by her. She also testified that she was not grabbed, but believes that she was brushed by the back of Devonta's hand on both occasions. Ms. Moye denied counsel's suggestion that perhaps Devonta didn't even realize he had touched her, commenting: "I doubt it."

Devonta's counsel also inquired as to what consequence she thought Devonta should suffer for this event. Ms. Moye replied that she felt that she had been sexually harassed, disrespected and humiliated and that the usual consequences of such acts, whatever they may be, should be employed.

**Devonta Davis** was questioned next. He was led through a series of questions and answers, the essence of which was that he did not recall coming in to contact with Ms. Moye on either occasion. His counsel led him through testimony that if such touching had occurred, it was not his intention to cause Ms. Moye any harm, discomfort or harassment and he offered an apology in that instance, which Ms. Moye accepted with curt thanks.

Devonta also testified that sports are his passion and the principal source of his motivation for school. This year, he played basketball, ran track and played football. His involvement was mostly at the freshman level, but he did play on the sophomore basketball team.

Devonta testified that he did not recall signing the student handbook receipt page that is at tab 15. He did not recall spending a PE class period going over the content of the handbook, but he did acknowledge receiving the handbook. He also testified on cross examination that he was aware that sexual harassment was not permitted at school.

Devonta denied ever saying anything inappropriate about Ms. Moye.

With regard to the prior incident involving the female student and the rumor, Devonta was questioned about the discipline report entry for March 1, 2007. That entry reads:

> Devonta announced to the class, "Do you want to hear the rumor I heard about Sydnei?" "I heard Sydnei gives good head."

Devonta testified that he said the words in quotes, but claims that he said them to Sydnei directly. He explained that he was trying to make her aware of what others were saying so that she could confront the others or secure the assistance of a Dean in making the rumor stop. He acknowledged that Sydnei's reaction to his question was a negative one

MAY-22-2007 07:28  Case: 1:07-cv-03873 Document #: 1 Filed: 07/10/07 Page 35 of 50 PageID #:35 06/10
FRANCZEK SULLIVAN   P                                                      329866#P

FROM :                          FAX NO. :8152304551           May. 22 2007 07:30AM P6

Devonta Davis
May 2, 2007 Hearing Report
Page 5

and that she became upset and yelled at him. Devonta also reports that she told him that
she did not know the person who Devonta claims said it first.

*   *   *   *   *

Devonta's testimony concluded the presentation of facts in this hearing. The attorneys
were then each given the opportunity to present a closing argument. Although the
following is not fact or evidence, the manner in which the attorneys characterized the
evidence and wove it together may be useful to the board in making a decision in this
case. I am therefore providing the following summaries of the closing arguments and the
two attorneys' conclusions as to what the evidence shows.

The **district's counsel** argued that Ms. Moye was very credible, that there were two
separate incidents involving Ms. Moye and that only in the context of the second
situation, in which more than ample room was available to avoid physical contact did the
first instance finally come in to focus. He pointed out that the post-event facts suggest
strongly that the "brushing" was deliberate (the talking and repeatedly looking at her by
Devonta and his friend), and the now-known collection of "vulgar" references to Ms.
Moye in the past by Devonta strongly suggested something other than mere mistake.

The district's counsel also argued that Devonta's prior involvement with sexually-related
offenses, when added to these instances strongly suggested that an alternate placement
would be highly appropriate, since Devonta needs to be held accountable for engaging in
repeated acts of inappropriate behavior.

**Devonta's counsel** began by pointing out that Devonta is a good and dependable young
man. He explained that in less than 24 hours, the family was able to collect a sheaf of
character reference letters that are being added to the hearing packet at tab 17. He
referred to Devonta's passion for athletics and his worry that an alternate placement
would remove the principal motivator for Devonta's academic work, since it would mean
Devonta would no longer be able to be on the various sports teams.

With regard to the incident itself, Devonta's attorney argued that while Ms. Moye was
certainly credible, so was Devonta. He insisted that it was possible that both were correct
– that Ms. Moye was, in fact, touched and that Devonta did so without even realizing it.
One scenario he offered was that the paper in Devonta's hand could have made contact
with Ms. Moye, meaning that both could be correct.

Counsel suggested that any number of other factors could explain a misperception by Ms.
Moye. These ranged from her newness in the classroom (and his argument that if she
were a fourth or fifth year teacher, we probably wouldn't be having this issue), to his
argument that she had been infrequently touched (such that any touching would strike her
as unusual) and included Devonta's size (over six feet tall) causing her to assign more
adult intentions to the actions of a fourteen year old boy.

MAY-22-2007 07:28  Case: 1:07-cv-03873  Document #: 1  FRANCZEK SULLIVAN P.C.  Filed: 07/10/07 Page 36 of 50 PageID #:36  3129886972  P.07/10

FROM :                                    FAX NO. :8152304551         May. 22 2007 07:31AM  P7

Devonta Davis
May 2, 2007 Hearing Report
Page 6

Counsel argued that there was no corroborating evidence to support Ms. Moye's account.
No one saw the brushing occur. He points out that if Devonta were doing this on
purpose, it would more likely than not have been done to "show off" for his friends.
Since Ms. Moye denied that there was any outburst in the classroom after the contact,
counsel argues that this establishes that it couldn't have been done to "show off."

Counsel also argued that because the students who submitted statements were not present
and could not be cross-examined, the district was in danger of "convicting" Devonta on
evidence that would never survive in a court of law. He insisted that Devonta had not
said anything vulgar about his teacher whatsoever, that all of the purported statements
attributed to Devonta by the other students amounted to Devonta observing that Ms.
Moye was attractive, which counsel argued was a true statement.

**The administrative recommendation** is, in lieu of expulsion, to place Devonta in an
alternative school setting for the remainder of the current school year and to have that
alternate placement continue for the first semester of the 2007-2008 school year.

Devonta's attorney offered an alternative. He suggested that Devonta instead be directed
to pursue counseling and evaluation. Although counsel believes that there is not a
problem or issue with Devonta, he pointed out that counseling and evaluation would
either confirm that opinion or correct something if it were found.

The hearing began at 10:27 am and concluded at 12:20 pm.

The **findings of fact** are as follows:

1. Devonta Davis is a student in Ms. Moye's 6th period computer class at Plainfield
   North High School.
2. On April 23, 2007, as Devonta was returning to his seat from the classroom
   printer, he passed by Ms. Moye.
3. Ms. Moye believes that as he passed, the back of Devonte's hand brushed across
   the lower portion of her buttocks.
4. Ms. Moye believes that Devonta touched her deliberately due to:
   a. the location of the touching
   b. the availability of four feet of clearance that could have avoided a
      touching
   c. the after-incident observation of Devonta and another student talking
      quietly and frequently looking up at her while doing so
   d. the statements of other students who report Devonta commenting on her
      looks and her buttocks
   e. a similar incident the prior week

MAY-22-2007 07:28    Case: 1:07-cv-03873 Document #: 1 Filed: 07/10/07 Page 37 of 50 PageID #:37
FRANCZEK SULLIVAN P C    3129658672    P.08/10

FROM :                          FAX NO. :8152304551        May. 22 2007 07:31AM  P8

Devonta Davis
May 2, 2007 Hearing Report
Page 7

     5. Devonta denies any recollection of there being any contact between him and Ms. Moye.

     6. Devonta has been a District 202 student since 5th grade.

     7. Devonta's high school discipline history is consists of 3 minor referrals and one for inappropriate language, which resulted in a three day out of school suspension.

     8. Devonta's present semester grades consist of:
          a. Algebra – C
          b. Computer Applications – D+
          c. Health and Wellness – D
          d. French – D
          e. English – C
          f. Biology – D

     9. There were no social work referrals and the only guidance visits have been for academic performance.

     10. Devonta does not have an IEP.

Respectfully submitted:

Mark C. Metzger, Hearing Officer
May 4, 2007

MAY-22-2007 07:28 Case: 1:07-cv-03873 Document #: 1 Filed: 07/10/07 Page 38 of 50 PageID #:38 .09/10
FRANCZEK SULLIVAN P C 3129869972

FROM :                          FAX NO. :8152304551           May. 22 2007 07:31AM P9

Devonta Davis
May 2, 2007 Hearing Report
Page 8

## APPENDIX

### Exhibits and Objections

Counsel for Devonta Davis offered objections to the submission and consideration of most of the tabbed exhibits submitted by the administration. I decided that the relaxed evidentiary rules permitted the submission and consideration of all of the documents submitted, but thought the following table may be of interest to the Board as it considers this case.

| Exhibit/Tab | Item | Objection |
|---|---|---|
| 1 | Biographical page | None |
| 2 | Board-requested summary page | Hearsay, not relevant and containing material prejudicial to Devonta that the Board should not consider. |
| 3 | Critical Incident Report | It fails to reflect that Devonta does not remember ever making contact with Ms. Moye. |
| 4 | Excerpt from school rules page of student handbook | Devonta does not recall receiving the book or signing for it. |
| 5 | Suspension letter | Ms. Brown never received it despite requests, but no objection to proceeding. |
| 6 | Notice of hearing letter | Ms. Brown never received it despite requests, but no objection to proceeding. |
| 7 | Student Referral Form | None |
| 8 | Dean Hudson's notes | None |
| 9 | Laura Moye's statement | None |
| 10 | Student Statement | Hearsay and the lack of an opportunity to cross examine the students. |
| 11 | Discipline History Report | Unfairly prejudicial to Devonta to consider prior acts; irrelevant in its inclusion of prior acts; unfair and prejudicial in including middle school items. |

Devonta Davis
May 2, 2007 Hearing Report
Page 9

| 12 | Transcript | Not relevant and opportunity for unfair prejudice due to a lack of high grades. |
| 13 | Grade reports for current semester | Same as #12 |
| 14 | Attendance report | Irrelevant and unfairly prejudicial. |
| 15 | Signed Receipt page from student handbook | Devonta doesn't remember signing it, but it is his signature. |
| 16 | Guidance and Social work referrals | Objection to the guidance report because it is not relevant and could be prejudicial; no objection to the social work report because there were no referrals. |

Student A Statement          **EXHIBIT____B____**

"Hey Chris, Ms. Moye looks fine today doesn't she?"

That's all Devonte said about Ms Moye to me

## Student B Statement

* He use to say how she look good and how she as his wife

* Most of the time he was using street talk but she didn't understand.

* He use to talk about how sexy she was

## Student C Statement

He said that she was sexy and that she had a big but and he said that she got a nice body and that he want to go out with her like on a date where they can be by them self he said to me that he hope she does not have a boyfriend.

Student D Statement

I didn't see Devonta do anything or hear anything inappropriate.

**EXHIBIT____c____**

| | |
|---|---|
| Fourth Tardy | Referral to Dean. Two-hour after school assignments (ASA) given. |
| Fifth Tardy | Referral to Dean. Saturday detention. |
| Sixth (or more) Tardy | If the student is a discipline problem and/or is failing class, he/she may be dropped from class with a grade of "F" and placed in a study hall. If the behavior persists, student will be placed on final contract. He/she may be dropped from class with a grade of "F" and placed in a study hall, regardless of academic status. |

## Tardies to Study Hall

Tardies to study hall will be considered as tardies to class and will result in disciplinary action.

## Tardies to Lunch

Students are expected to be on time to the cafeteria for lunch just as they are for any other class or destination on their schedule. Students in the halls without a pass may be referred to the Dean and issued a one-hour detention.

# DISCIPLINE INFORMATION

Three principles govern all the disciplinary rules at the Plainfield School District #202 High Schools:
(1) Conduct that is disruptive of the educational process is prohibited.
(2) Conduct that infringes upon the rights of others is prohibited.
(3) Conduct that endangers the safety of the student or others is prohibited.

## Definition – "Final Contract"

Written notification of behavior expectations and final consequences for student actions. Final contract consequences may include removal from class, suspension from school, and/or administrative action that may lead to expulsion proceedings.

## Definition - "Suspension"

See District 202 Board Policy File:JGD "Student Suspension"

## Definition – "Expulsion"

See District 202 Board Policy File: JGE "Student Expulsion"

A copy of district policy is available in the Principal's Office and the Media Center.

Students are subject to suspension, expulsion, or other discipline for misconduct that occurs during school time, on school grounds, at the WILCO Center, at any school-supervised or related activity, while going to or from school or a school-sponsored or related activity, while riding school busses or other school-arranged transportation, or wherever the activity or event bears a reasonable relationship to school. These provisions apply even if particular places or times of misconduct are specified elsewhere in this Student Handbook. Also, the disciplinary consequences set forth in this Student Handbook are guidelines only. Disciplinary action may be more or less severe where deemed appropriate by school officials or the Board of Education.

Any "out-of-school suspended or expelled student" is banned from participation in or attendance at any school-sponsored activity, which could include attendance at graduation ceremony, and is not permitted on the grounds of District 202 campuses or the WILCO Career Center. Suspensions may run from 1-10 school days.

41

For any event that subjects a student to disciplinary sanctions, the administration reserves the right to seek such discipline, including internal and external suspensions and expulsions. Such a determination is to be made based upon the seriousness of the conduct, the past conduct of the student, the effect of the action on the delivery of educational services, the severity of the penalty imposed, and the student's interests.

Corporal punishment is not permitted at Plainfield School District #202 High Schools.

Finally, the fact that a particular violation of good conduct is not specifically mentioned in the following pages is not a satisfactory defense for any improper conduct. It is simply impossible to list every action which is inconsistent with good school citizenship. We expect students to form the habit of not only observing the regulations contained herein, but also the general rules of good conduct and common sense acknowledged by the community in which we live.

All students must be knowledgeable of the school rules which relate to conduct and discipline.

A reciprocal reporting agreement has been established between District 202 and local law enforcement agencies which is maintained pursuant to the authority of Section 10-20.14 of The School Code of Illinois and in compliance with Section 1-7 of the Juvenile Court Act.

The cooperation and flow of information is essential in providing the safe, healthy, and violence-free school environment to which all children are entitled and which all children need to thrive and learn. School personnel and law enforcement may exchange information concerning:
a) Any criminal offense classified as a felony;
b) Any criminal offense classified as a Class A or B misdemeanor.

In addition, school personnel and law enforcement may work together regarding any suspected activity that potentially threatens the safety, order, or discipline of the school.

### Critical Incidents
A student guilty of a critical incident may be expelled from school by the Board of Education for the remainder of the semester, for the duration of the school year, or for up to two calendar years. In certain critical incident matters, the unique circumstances of the situation may afford the school administration the latitude to consider student placement at an alternative education setting in lieu of an expulsion hearing. Any critical incident will also be referred to the local law enforcement agency and may result in the arrest and prosecution of the involved student. Additionally, an expelled student will be banned from participation in or attendance at any school-sponsored activity and is not permitted on the grounds of District 202 campuses or the WILCO Career Center.

### Definition – "Possession"
Possession means having any knowledge of, or any control over, an item. Control includes, but is not limited to, having access to an item in a school locker, personal effects, a vehicle, or other place where the item is located. It is not necessary that the student intends to control the item. A student may acquire knowledge of an item visually, by being told about the item, or through other sensory perception. A student's knowledge of an item will be based on the surrounding circumstances, not just the student's statements. For example, "forgetting" that an item is in one's locker, personal effects, or vehicle does not constitute a lack of knowledge. Also, for example, coming onto school grounds or to a school-sponsored event in a vehicle that the student knows contains an item constitutes possession of that item, even if the vehicle or the item is not the student's.

This provision on possession applies to any policy or rule that regulates or prohibits possession of any item, such as weapons or drug paraphernalia, and such substances as tobacco, alcohol, drugs, and look-alikes of such items or substances.

### Definition – "Look Alike"

A "look-alike" is any substance or item, which is not, but reasonably appears to be, or is represented to be, the real substance or item. Examples are a toy gun that is very difficult to distinguish, except upon close examination, from an actual gun, or a green leafy plant material which is not, but is claimed, believed, or appears, to be marijuana.

### Possession

A student **shall not:**

1. Use, possess, distribute, arrange to distribute, be under the influence of or consume any illegal or controlled substance, including marijuana, alcohol, unlawful drugs, "look alike" drugs, or any substance not prescribed for the student, that is typically intended to be used to achieve a high or altered mental state. Being under the influence includes, but is not limited to, the emission of the odor of any of these substances, such as having alcohol on the breath, or any impairment of normal functioning, such as slurred speech, inability to walk properly, or dilated pupils.
2. Possess drug paraphernalia. Possession of drug paraphernalia is not permitted, and such material will be confiscated from students by any school employee and turned over to the police liaison officer.
3. Steal and/or possess stolen property of the school or a school employee, a member of the Board of Education, a bus driver, a student, a school volunteer, a school visitor, or the company with whom the district contracts for transportation services.
4. Possess or set off fireworks or other explosive substances.
5. Possess or use a weapon. Weapons include, but are not limited to: (1) guns, knives, explosive devices, any other item which is typically used to cause bodily harm and any other item defined by law to be a weapon, (2) items such a baseball bats, pipes, bottles, locks, sticks, compasses, pencils and pens if used, or attempted to be used, to cause bodily harm; and (3) "look-alike" weapons. Possession and/or use of weapons may result in a minimum one-year expulsion in accordance with the federal Gun-Free Schools Act and the related provisions of the School Code of Illinois.
6. Use, possess, distribute, or arrange to distribute inappropriate materials.
7. While the District respects students right to freedom of expression under the First Amendment, students may be disciplined for website postings that (a) materially and substantially disrupt the educational process and/or (b) constitutes threats which endanger the health, safety and well-being of District students or staff members.

In addition, a student **shall not:**

1. Engage in fighting or incite a fight while on school property, on school busses/bus stops, at any school-sponsored activity, or the WILCO Career Center.
2. Engage in gang activity. A "gang" means any combination, confederation, alliance, network, conspiracy, understanding, or other similar cojoining, in law or in fact, of three or more persons engaging in a course or pattern or criminal activity and/or gang activity relating to the violation of school rules. "Gang activity" or identifiers includes, but is not limited to, a common name or identifying sign, symbol, or specific color apparel displayed or other unifying mark, manner, protocol or method of expressing or indicating membership. Gang activity includes, but is not limited to any act in furtherance of the gang or use of gang symbols, such as drawings, hand signs, attire, shaved eyebrows, pant legs worn with the hemline at different heights, and shirts worn with one shoulder on and the other off. School may discipline any student for gang

43

activity/identifiers if the student has possession of any materials showing any individual engaging in gang activity.

3. Be grossly disobedient or exhibit gross misconduct within a school-related environment or towards a school employee, a member of the Board of Education, a bus driver, a student, a school volunteer, or a school visitor.

4. Intimidate, threaten, bribe, strike, or physically assault (which includes gang activity) a school employee, a member of the Board of Education, a bus driver, a student, a school volunteer, or a school visitor. This includes inappropriate physical contact and/or verbal confrontation.

5. Vandalize, damage, deface, destroy, or tamper with the property of the school district, a school volunteer, visitor, or the transportation contractor. Computer damage of hardware, software, and equipment will be deemed vandalism. Restitution will be required.

6. Activate a school fire alarm without appropriate cause or make a false report of a fire.

7. Make a bomb threat.

8. Set a fire within a school building, to other school property, to the property of the company with whom the district contracts for transportation services, or to the property of a school employee, a member of the Board of Education, a bus driver, a student, a school volunteer, or a school visitor.

9. Repeatedly violate any of the school rules of behavior in the Parent/Student handbook.

10. Bully another student. Bullying means aggressive or negative gestures, or written, verbal, or physical acts that place another student in reasonable fear of harm to his or her person or property, or that having the effect of insulting or demeaning other students in such a way as to disrupt or interfere with the school's educational mission or the education of any student. Bullying most often occurs when a student asserts physical or psychological power over, or is cruel to, another student perceived to be weaker. Such behavior may include but is not limited to: pushing, hitting, threatening, name calling, or other physical or verbal conduct of a belittling or browbeating nature.

11. Possess substances packaged in aerosol containers if used in a manner not intended.

Section 10-20.14 of <u>The School Code of Illinois</u> that reads, in part, "A Parent/Teacher Advisory Committee shall, in cooperation with local law enforcement agencies, develop, with the School Board, policy guidelines and procedures to establish and maintain a reciprocal reporting system between the school district and local law enforcement agencies."

## Computer Usage
All use of technology and potential misuses are outlined in the Board of Education "Computer, Internet and Electronic Mail User Agreement." (File: INA.AP) "The failure of any user to follow the terms of the User Agreement will result in the loss of privileges, disciplinary action, and/or appropriate legal action."

## Suspension/Out of School Assignment Policy for Attendance and Discipline Issues
The action of a student committing any infractions listed below will not be tolerated and may result in the student being suspended from classes or school or given an out of school assignment. Students suspended will receive credit for class assignments if given timelines are met upon return. <u>Homework will be available for all students that are suspended 3 days or longer. The work can be picked up in the attendance office and will be available during normal school hours.</u> Offending students may also be referred to student services personnel for additional services.

## Control Center
Students who misbehave in the Control Center or who cut the Control Center may be suspended from school. Tardies to the Control Center may result in an in-school suspension.

**Major Offenses**

Actions that are major offenses that may lead to suspension, an after-school assignment and/or social probation (social probation may include but not limited to athletic and other extra curricular events) are:

1. Inappropriate Language, Gesture, Material, and Clothing: A student, while on school property, on school busses or at any school-sponsored activity shall not use obscene, suggestive or highly disrespectful language, or gestures; shall not use racial or ethnic slurs; shall not possess or distribute profane, obscene, suggestive material or clothing; and shall not possess clothing or material, use gestures or graffiti, or otherwise represent cults, gangs, or related activities. **School may discipline any student for gang activity/identifiers if the student has possession of any materials showing an individual engaging in gang activity.** (School Code of Illinois, 122.31-3)

2. Insubordination: A student while on school property, on school busses or at any other school-sponsored activity, shall not defy or refuse to obey reasonable instructions given by a school employee, a bus driver, or other authorized school personnel. This also includes failure to serve a teacher detention that had a minimum of twenty-four hours notification, After School Assignment (ASA), or Saturday Assignment.

3. Misbehavior with Substitutes: Students should be on their best behavior in class, especially when substitute teachers are in charge. Students referred to the Dean's Office for misbehavior may be assigned an in-school suspension or an after-school assignment.

4. Use of Tobacco: Use of or possession of smoking materials (i.e. lighters, matches, rolling papers, etc.), cigarettes, chewing tobacco, nicotine products, and/or snuff is not permitted on school property and items will be confiscated from students by any school employee. Possession of tobacco is in violation of a Plainfield Village/City of Joliet Ordinance. A referral to the police liaison officer may result in a fine.

5. Student Sexual Harassment: A learning and working environment that is free from sexual harassment will be maintained. It will be a violation for any student to harass a staff member or student through conduct or communication of a sexual nature, or in any other nature, on school grounds, at school events, or on the school bus. First time violators will be given an in-school or out-of-school suspension. A second violation may constitute a critical incident.

6. Pagers/Beepers: It is against state law to have a pager/beeper in a school. Pagers/beepers will be confiscated and turned over to the police department. (The School Code of Illinois, 12.10-21.10) (Chapter 38 of the Illinois Criminal Code, Section 44-3)

7. Cell Phones/Communication Devices: Cell Phones, BlackBerry or any other communication device is prohibited from use and display during the school day. All communication devices must be turned off upon arrival at school and remain off until the school day ends. Taking, displaying and sending photos on cellular phones or other communication devices as well as text messaging is also prohibited. Cell phones and communication devices are considered to be a disruption of the educational process and their use during the school day will result in disciplinary action. In addition, these devices may be confiscated. Exceptions to this rule may be made only with the approval of the Dean of Students.

8. Electronic/Entertainment Devices: Personal audio and video devices (such as CD players, MP3 players, IPODS, radios, tape recorders, video games, DVD players, cameras, televisions, etc.) are prohibited from use and display during the school day. Such devices are to be turned off and placed in lockers upon the arrival at school until the school day ends. These devices are considered to be a disruption of the educational process and their use during the school day will result in disciplinary action. In addition, these devices may be confiscated. Exceptions to this rule may be made only with the approval of the Dean of Students.

9. <u>911 Calls:</u> A student making an unauthorized 911 call for unfounded reasons is a major offense and will lead to an out-of-school suspension and police involvement.
10. <u>Gambling:</u> All forms of gambling are prohibited.
11. **<u>Internet Postings:</u> While the District respects students right to freedom of expression under the First Amendment, students may be disciplined for website postings that (a) materially and substantially disrupt the educational process and/or (b) constitute threats which endanger the health, safety and well being of District students or staff members.**

## Educational Disruption Procedures

When a student disrupts the educational environment, such as by talking, by sleeping, the following interventions will take place:

1st Offense - Teacher/Student Conference
2nd Offense - Teacher/Parent Conference. Teacher will assign a teacher detention.
3rd Offense - Dean referral, after school assignment or Saturday detention – parent contact.
4th Offense - Dean referral, Saturday Assignment, or control center assignment, teacher and dean conference – parent contact, student final contract.
5th Offense - Control center, final contract, if student is failing at this point he/she may be dropped from class – parent contact.

# CLUBS AND ACTIVITIES

## Athletic and Extra-Curricular Rules (No Pass/No Play)

Plainfield School District #202 High Schools, an Illinois High School Association member, has adopted the IHSA's rules and standards for academic eligibility for athletics and participants in non-athletic clubs and activities. For competitive clubs and organizations, the eligibility check would be the same as athletics (on a week by week basis). For non-competitive clubs and organizations, the eligibility check would be semester by semester. The IHSA has set the eligibility requirements as passing 20 hours per week or passing grades in four subjects.

## Spectator Conduct and Sportsmanship Policy for Athletic and Extracurricular Events.

Also, refer to District 202 Board Policy File:KR "Spectator Conduct and Sportsmanship Policy for Athletic and Extracurricular Events"

In order to gain admittance to a high school athletic or extracurricular event, a middle school student must present his/her school ID.

## Plainfield Community Consolidated School District 202 Athletic and Non-Athletic Codes

Athletes and participants in athletics and applicable non-athletic clubs and organizations are subject to rules and standards as described in the Plainfield Community Consolidated School District 202 Athletic or Non-Athletic Codes. Completed Athletic or Non-Athletic Codes must be on file prior to practice or activity participation. For penalties for violations of the code, please reference the Plainfield Community Consolidated School District 202 Athletic or Non-Athletic Code(s) (each student/athlete and extra-curricular participant is provided with the Athletic or Non-Athletic Code).

## Attendance Policy for Extracurricular Events

A student will be in attendance during the school day to be eligible to participate in extracurricular (athletic and non-athletic) events or practices. A student will also be in attendance on the last day of school before a weekend or vacation in order to be eligible to participate in events or practices over those time periods. Administrative approval for pre-arranged

.-25-07   11:59AM   FROM-                                                           T-818   P.002/002   F-195

# Plainfield Community Consolidated
# School District 202

We prepare learners for the future.

District 2O2

---

**Administration Center**
15732 Howard Street
Plainfield, IL 60544
www.learningcommunity202.org

(815) 577-4000 – main telephone
(815) 436-7824 – main fax

May 17, 2007

EXHIBIT ___D___

Mrs. Brown
380 Richmond Dr.
Romeoville, IL 60446

**CERTIFIED MAIL** ~~Fixed~~ *picked up in person 5/17/07 By (Charlene Brown)*

Re:   Devonte Davis

Dear Mrs. Brown:

As you know, the Board of Education met on May 14, 2007 to consider the administration's recommendation of expulsion regarding your child. At the Board of Education's meeting, the Board members reviewed the hearing officer's report and documents submitted during the hearing. After reviewing this information, the Board determined that your child had been inappropriate with one of his teachers.

As a result, the Board's decision, which is final, is expulsion for the remainder of the 2006-2007 school year and one (1) year expulsion for the 2007-2008 school year.

Sincerely,

Mark Heiss

Mr. Mark Heiss
Director of Administration and Personnel

MH/kb

CC:   Sharon Gronemeyer, Asst. Supt for Student Services