# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLENE BROWN, individually and as Mother of Devonta Davis, a minor, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 07 C 3873<br>)<br>) Judge Ruben Castillo |
| PLAINFIELD COMMUNITY CONSOLIDATED DISTRICT 202, et al., | )<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This suit was brought by Charlene Brown ("Plaintiff"), individually and on behalf of her son Devonta Davis ("Devonta"), who was a freshman at Plainfield North High School during the 2006-07 school year. In May 2007, Devonta was expelled for the remainder of the school year and for the entirety of the 2007-08 school year for inappropriately touching his teacher. Plaintiff filed this action against the school district and various individual school defendants (collectively the "Defendants") pursuant to 42 U.S.C. § 1983, alleging race discrimination and violation of Devonta's due process rights. Before the Court is Plaintiff's motion for a temporary restraining order and preliminary injunction, in which she seeks to have the expulsion stayed and requests that Defendants be ordered to enroll Devonta for the 2007-08 school year. For the following reasons, the motion is denied.

1

## FACTS & PROCEDURAL BACKGROUND

On April 23, 2007, Devonta allegedly brushed his teacher's buttocks with the back of his hand. (R. 1, Compl. ¶ 24.) The teacher, Laura Moye ("Moye"), reported that Devonta had done the same thing about a week earlier; the first time she assumed it had been an accident, but after the second incident she concluded his actions were not accidental and reported him to school officials. (*Id.* ¶¶ 25-27.)

A disciplinary hearing was held on May 2, 2007, at which Devonta and his mother were present and were represented by counsel. (*Id.* ¶¶ 28-29 & Ex. A, Summary of Hearing at 1-4.) Moye testified, and Devonta's counsel was permitted to cross-examine her about the incident. (R. 1, Compl., Ex. A, Summary of Hearing at 3-4.) Devonta testified that he did not recall touching Moye on either occasion, but that if such touching occurred "it was not his intention to cause Ms. Moye any harm, discomfort or harassment." (*Id.* at 4.) Devonta's mother testified in his defense, describing Devonta's upbringing and his interests outside of school, which included sports and the teen ministry at his church. (*Id.* at 2-3.) Also submitted in evidence were the unsworn statements of three students, identified only as "A", "B", and "C", who claimed to have overheard Devonta making inappropriate comments about Moye, including that she was "sexy," had a "nice body," and that he wanted to go out on a date with her. (R. 1, Compl. ¶¶ 32-38 & Ex. B, Student Statements.) Following the hearing, the school board on May 14, 2007 decided to expel Devonta for the remainder of the school year and the entirety of the 2007-08 school year. (R. 1, Compl., Ex. D, Letter from Plainfield Comm. Cons. Sch. Dist. 202.)

Plaintiff has filed two lawsuits challenging the board's decision. In June 2007, she filed a case in Will County Circuit Court which seeks administrative review of the school board's

2

decision. (*See* R. 18, Def.'s Opp. at 3.) On July 10, 2007, she brought this suit in federal court, alleging that the board discriminated against Devonta based on his race and violated his due process rights in the context of his expulsion hearing. (R. 1, Compl.) In this motion, Plaintiff seeks a preliminary injunction requiring that Devonta be allowed to enroll for the upcoming school year, which begins on August 23, 2007. (R. 10.)

## ANALYSIS

As the Supreme Court has observed, "[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain a preliminary injunction, the movant must show (1) he has some likelihood of success on the merits; (2) no adequate remedy at law exists; (3) he will suffer irreparable harm which, absent injunctive relief, outweighs the harm the non-movant will suffer if the injunction is granted; and (4) the injunction will not harm the public interest. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006); *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). The Court employs a "sliding scale" analysis, whereby the greater the likelihood of success on the merits, the less of a showing that is required relative to risk of harm, and vice versa. *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001). The purpose of a preliminary injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Platinum Home Mortg. Corp. v. Platinum Fin. Grp., Inc.*, 149 F.3d 722, 726 (7th Cir. 1998).

### 1. Likelihood of success on the merits

As for Devonta's race discrimination claim, there is no detail regarding the nature or

substance of the claim provided in either the complaint or the preliminary injunction motion. According to the complaint, Devonta is African-American, but we have no other information to indicate why he believes the school board intentionally discriminated against him because of his race. Without more, the Court cannot conclude that Devonta has established any likelihood of success on the merits of his race discrimination claim for purposes of this motion.

As for the due process claim, Plaintiff argues that various procedural errors at Devonta's hearing violated his due process rights, the bulk of which center around the school board's reliance on the anonymous student statements. (*See* R. 10, Motion at ¶¶ 21-29.) Plaintiff argues that the board should not have relied on these statements because the witnesses were never identified and Devonta was not given an opportunity to cross-examine them at his hearing. (*Id.*)

In *Goss v. Lopez*, 419 U.S. 565 (1975), the Supreme Court held that a student facing a short suspension of 10 days or less is entitled to "oral and written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* at 581. The Court concluded that the student had no right to confront or cross-examine witnesses, but left open the question of whether longer suspensions or expulsions "may require more formal procedures," without elaborating on what such procedures might entail. *Id.*

The Seventh Circuit has held that to comport with due process, expulsion procedures must provide the student with notice of the charges against him, notice of the time of the hearing, and a full opportunity to be heard, but "need not take the form of a judicial or quasi-judicial trial." *Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1010-11 (7th Cir. 2002); *see also Linwood v. Bd. of Educ.*, 463 F.2d 763 (7th Cir. 1972) (high school expulsion hearings are not to

be equated with "a criminal trial or a juvenile court delinquency proceeding"); *Betts v. Bd. of Educ.*, 466 F.2d 629 (7th Cir. 1972) (student and parent must only be given some opportunity to present mitigating evidence prior to expulsion). Here, Devonta was given notice of the charges and attended the hearing along with his mother and their counsel. He was allowed to testify at the hearing and present his mother as a witness in his defense. His counsel was permitted to cross-examine the teacher who had accused him as well as a school administrator involved in the case, and was also allowed to make arguments as to why Devonta should not be expelled. These procedures comported with the requirements of *Remer*.

Plaintiff asserts, however, that the use of the anonymous student statements was improper because Devonta was not permitted to cross-examine these witnesses. Although the Seventh Circuit has not specifically decided whether there is a right to cross-examine witnesses at a high school expulsion hearing, the Court's analysis in a related context is instructive. In *Osteen v. Henley*, 13 F.3d 221, 223 (7th Cir. 1993), the Court considered the due process claim of a college student who claimed he had a right to counsel at his expulsion hearing. The Court considered the claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), which requires an analysis of the cost of the additional procedure sought, the risk of error if it is withheld, and the consequences of error to the person seeking the procedure. *Id.* at 226. The Court concluded:

> [W]e do not think he is entitled to be represented in the sense of having a lawyer who is permitted to examine or cross-examine witnesses, to submit and object to documents, to address the tribunal, and otherwise to perform the traditional function of a trial lawyer. To recognize such a right would force student disciplinary proceedings into the mold of adversary litigation.

*Osteen*, 13 F.3d at 225. Weighing the costs of adopting such a requirement with the limited

benefits, the Court found the right to counsel was not a requirement of due process. *Id.* Given this language, coupled with the Court's admonition that a high school disciplinary hearing is not to take the form of a "judicial or quasi-judicial trial," *see Remer*, 286 F.3d at 1010-11, we find it unlikely the Seventh Circuit would recognize a right to cross-examination in the circumstances presented by this case.

Other courts have relied on *Mathews* to conclude that the use of anonymous witness statements at high school expulsion hearings does not offend due process principles. *See Newsome v. Batavia Loc. Sch. Dist.*, 842 F.2d 920 (6th Cir. 1988) (high school student threatened with expulsion based on statements of other students did not have due process right to learn of students' identities); *Brewer v. Austin Indep. Sch. Dist.*, 779 F.2d 260 (5th Cir. 1985) (high school student not entitled to confront and cross-examine witnesses to his alleged drug sales); *B.S. ex rel. Schneider v. Bd. of School Trust., Fort Wayne Comm. Sch.*, 255 F. Supp. 2d 891 (N.D. Ind. 2003) (at expulsion hearing, student did not have due process right to confront and cross-examine fellow student who accused him of sexual misconduct). The Court finds the analysis of these courts persuasive.

Moreover, the student statements considered by the school board played only a small role in Devonta's expulsion. Although the statements were certainly inculpatory, the key evidence against Devonta was the testimony of Moye, who was adamant that Devonta had touched her on her buttocks on two occasions, and that the second incident could not have been an accident. She testified that: the location of the touching (the lower part of her buttocks) made it unlikely the touching was accidental; Devonta had more than ample space (approximately four feet) to pass her without touching her; and finally, the way Devonta was talking to his friend and looking at

her after the incident made her believe the touching was purposeful. (R. 1, Compl., Ex. A, Summary of Hearing at 1.) Devonta was permitted to cross-examine Moye and present his own version of events. It is unknown what cross-examination of students A, B, and C might have revealed, but even assuming all three witnesses were entirely discredited, the testimony of Moye would remain, providing ample basis for the board's decision.[1] Based on the above, the Court finds that Devonta has not established a likelihood of success on his due process claim related to the admission of the student statements.

Plaintiff also argues that under the school's handbook and the Illinois School Code, 105 ILCS 5/10-22.6, at most Devonta should have been suspended for his actions. But as the board points out, the School Code gives the board authority to expel a student for up to two years, and both the handbook and the Code afford the board considerable discretion to make an appropriate disciplinary decision in light of the individual circumstances of each case. (*See* R. 1, Compl., Ex. C, Handbook at 41; 105 ILCS 5/10-22.6(d).) Additionally, although Plaintiff argues that this was Devonta's first offense, warranting a lighter sentence, there is evidence that this was his second harassment-related offense. Earlier in the year, Devonta served a three-day suspension for using inappropriate language to a classmate. Devonta had apparently confronted a female classmate about a rumor involving her sexual habits (the rumor was the girl "gave good head"), and asked her if it was true. (R. 1, Compl., Ex. A, Summary of Hearing at 3.) The classmate took offense

---

[1] For this reason, Devonta's citation to *Colquitt v. Rich Township High Sch. Dist.*, 699 N.E.2d 1109 (Ill. App. Ct. 1998) is inapposite, since in that case the testimony of the absent witnesses was critical to the outcome of the proceeding. His citation to *Camlin v. Beecher Comm. Sch. Dist.*, 791 N.E.2d 127 (Ill. App. Ct. 2003) is also unhelpful, since in that case the real issue was that the student was not given adequate notice of the charges against him. Moreover, these Illinois cases are not binding on the Court; we must apply federal law to determine whether Devonta's due process rights were violated.

and reported him to school officials. Although Devonta disputes the circumstances surrounding this incident, claiming that he was informing the girl about the rumor in an attempt to help her, the board could reasonably take the view that Devonta had engaged in harassing conduct before, and that he should be punished more severely for the touching incident. Indeed, the touching of Moye on April 23 could be viewed as Devonta's *third* incident of harassing conduct, if one counts the prior touching of Moye approximately one week earlier which she initially believed was accidental.

The Court also finds little merit to Devonta's claim that his due process rights were violated because the hearing officer failed to make a recommendation to the board. Even assuming this type of minor procedural irregularity could amount to a federal due process violation, *see Osteen*, 13 F.3d at 225, the statute does not support Devonta's reading. *See* 105 ILCS 5/10-22.6(a) ("If a hearing officer is appointed by the board he shall report to the board a written summary of the evidence heard at the meeting and the board may take such action thereon as it finds appropriate.") There is no dispute here that the hearing officer made a written summary of the evidence heard at Devonta's hearing. (R. 1, Compl., Ex. A, Summary of Hearing.)

Finally, Plaintiff raises a substantive due process claim that Devonta was arbitrarily denied his right to an education by the board's decision. A substantive due process violation will be found in the context of a school disciplinary hearing only where there is an "extraordinary departure from established norms." *Dunn v. Fairfield Comm. High. Sch.*, 158 F.3d 962, 966 (7th Cir. 1998). "[O]nly the most egregious official conduct is arbitrary in the constitutional sense." *Remer*, 286 F.3d at 1013. For relief to be granted, the Court must find an abuse of power that

"shocks the conscience" and is unjustifiable by any governmental interest. *Id.*

This case falls far short of reaching that standard. Although the punishment here was harsh, the school board could reasonably conclude that *any* unwanted touching of a teacher by a student (particularly of the intimate body part involved here) warrants a stiff punishment. Such action may reasonably be necessary to deter student misconduct and ensure a safe learning environment for both students and teachers. *See New Jersey v. T.L.O.*, 469 U.S. 325, 350 (1985) ("Without first establishing discipline and maintaining order, teachers cannot begin to educate their students.") (Powell, J., concurring). Moreover, "the meting out of disciplinary punishment is a matter left largely to the discretion of the school authorities." *Lamb v. Panhandle Comm. Unit Sch. Dist. No. 2*, 826 F.2d 526, 528 (7th Cir. 1987). Even if this Court might view the punishment as harsh, "[i]t is not the role of the federal courts to set aside the decisions of school administrators which the court may view as lacking a basis in wisdom or compassion." *Id.* at 530. For these reasons, the Court finds that Devonta has a low likelihood of success on the merits of his claims.

### 2. No Adequate Remedy At Law/Irreparable injury

We next consider the extent to which Devonta will be irreparably injured if injunctive relief is not granted. The Court is perplexed that Devonta waited more than two months after the board's decision to file this action, and another week to seek injunctive relief.[2] He already missed the remainder of the 2006-07 school year, and there is no evidence before us as to what he was doing during that period, such as attending private school or receiving a home-school

---

[2] Plaintiff states without elaboration that during this period she was attempting "to resolve the expulsion extrajudiciously." (R. 19, Reply at 4.)

education, which would affect the assessment of his injury. Nevertheless, there can be little doubt that a student possesses a significant interest in obtaining a public school education, and that an expulsion may have long term negative consequences with respect to later opportunities for higher education or jobs. *See Goss*, 419 U.S. at 575. In light of this significant interest, the Court finds that this factor tips in favor of granting injunctive relief.

### 3. Balancing of Harms

Next the Court must consider the relative balance of harms. While Devonta will undoubtedly suffer harm as a result of not being able to attend public school during the 2007-08 school year, the harm to the board cannot be discounted. In *Boucher v. School Bd. of School Dist. of Greenfield*, 134 F.3d 821 (7th Cir. 1998), the Seventh Circuit reversed an order by the district court granting preliminary injunctive relief to an expelled high school student. The Court observed:

> While the district court's statement that a year's expulsion is extreme is understandable, we cannot accept the conclusion that the harm the injunction imposes on the Board is insignificant. . . . Under the district court's analysis, a school often would be powerless to expel a student able to mount a nonfrivolous legal challenge to the expulsion, unless the school could prove that the student's continued attendance actually presents a current threat of tangible injury. The Supreme Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.

*Boucher*, 134 F.3d at 826-27. This same analysis is applicable here. In light of the low likelihood that Devonta will ultimately prevail on the merits, the balance of harms tips in favor of the school board. Returning Devonta to school before the end of his expulsion, even on a temporary basis, would undermine the board's goal of policing sexually harassing conduct,

deterring unacceptable conduct, and fostering a harassment-free environment for students and staff. Forcing the school board to enroll Devonta during the pendency of this suit, which could take months or longer to resolve, is not appropriate. Thus, the Court finds the third factor weighs in favor of denying injunctive relief.

### 4. The Public Interest

Last, we must consider whether entry of a preliminary injunction would harm the public interest. *Christian Legal Soc'y*, 453 F.3d at 859. While the Court is cognizant of the interest of a student to receive a public school education, the Court also recognizes the right of other students and staff to be free of harassment, along with the school board's need for latitude to punish student misconduct in a manner it deems appropriate. *See Lamb*, 826 F.2d at 528. The harassing conduct for which Devonta is being punished could reasonably be viewed as a threat to Devonta's teachers and fellow students, and a disruption to the learning environment at his school. In light of these circumstances, the Court finds that the public interest weighs in favor of denying injunctive relief.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for a temporary restraining order and preliminary injunction (R. 10) is denied. The parties shall appear for a status hearing in this case on **August 15, 2007 at 9:45 a.m.**

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated: August 8, 2007**