

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHARLENE BROWN, individually and as Mother of Devonta Davis, a minor, | ) ) ) ) | |
| Plaintiff, | ) ) | **No. 07 C 3873** |
| v. | ) ) | **Judge Ruben Castillo** |
| PLAINFIELD COMMUNITY CONSOLIDATED DISTRICT 202, et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This suit was brought by Charlene Brown ("Plaintiff"), individually and on behalf of her son Devonta Davis ("Davis"), who was expelled from Plainfield North High School for inappropriately touching his teacher. Plaintiff filed this action against the school district and various individual school officials (collectively the "Defendants") pursuant to 42 U.S.C. § 1983, alleging that Defendants violated Davis's civil rights and discriminated against him based on his race. (R. 24, Am. Compl.) Currently before the Court is the Defendants' motion to dismiss the due process claims contained in Count I of the Amended Complaint. (R. 28, Defs.' Mot. to Dismiss.) For the following reasons, the motion is granted.

### RELEVANT FACTS

Davis was a freshman at Plainfield North High School during the 2006-07 school year. (R. 24, Am. Compl. ¶ 21.) On or about April 23, 2007, Laura Moye ("Moye"), one of Davis's teachers, reported that Davis brushed her buttocks with the back of his hand during class. (R. 24,

1

Am. Compl. ¶¶ 23-24.) Moye reported that Davis had touched her in the same way about a week earlier; the first time she assumed it had been an accident, but after the second incident she concluded his actions were not accidental and reported him to school officials. (*Id.* ¶¶ 25-26.) Her report led to an investigation by the school administration. (*Id.*, Ex A., Summary of Hearing at 1.)[1]

As a result of the investigation, a disciplinary hearing was held on May 2, 2007, at which Davis and his mother were present and represented by counsel. (*Id.* ¶ 28, Ex. A at 1.) Moye testified, and Davis's counsel was permitted to cross-examine her about the incident. (*Id.*, Ex. A at 3-4.) She was insistent that Davis had touched her and that his actions were not accidental. (*Id.*) Davis also testified, claiming that he did not recall touching Moye on either occasion, but that if such touching occurred "it was not his intention to cause Ms. Moye any harm, discomfort or harassment." (*Id.* at 4.) He offered Moye an apology. (*Id.*) Davis's mother testified in his defense, describing his upbringing and his interests outside of school, which included sports and the teen ministry at his church. (*Id.* at 2-3.) Also submitted into evidence were the unsworn statements of three students, identified only as "A," "B," and "C," who claimed to have overheard Davis making inappropriate comments about Moye, including that she was "sexy," had a "nice body," and that he wanted to go on a date with her. (*Id.* ¶¶ 32-38 & Group Ex. B,

---

[1] In deciding a motion to dismiss, the Court may consider documents attached to the complaint. Fed. R. Civ. P. 10(c); *188 LLC v. Trinity Industries, Inc.*, 300 F.3d 730, 735 (7th Cir. 2002). Here, Plaintiff attached the following documents to the Amended Complaint: (1) the hearing officer's "Summary of Hearing" report (Exhibit A); (2) student witness statements (Group Exhibit B); (3) portions of the school's student handbook (Exhibit C); and (4) a letter from the school board advising Plaintiff of its decision to expel Davis (Exhibit D). Each of the documents are referenced in the Amended Complaint and are central to Plaintiff's claims. The Court thus considered these documents in ruling on the motion to dismiss.

2

Student Statements.) There was a fourth statement from a student identified as "D," who stated, "I didn't see Devonta do anything or hear anything inappropriate." (R. 24, Am. Compl., Group Ex. B.)

There was also evidence presented that Davis had been involved in a prior disciplinary incident. (*Id.*, Ex. A at 4.) In March 2007, Davis was given a three-day suspension for using inappropriate language regarding a female classmate. He had stated, "Do you want to hear the rumor I heard about Sydnei? I heard Sydnei gives good head." (*Id.* at 4-5.) At the hearing, Davis disputed the circumstances surrounding this incident, but he admitted making the above statement. (*Id.* at 4-5.) He further acknowledged that his classmate, Sydnei, had become upset with him as a result of his making this statement. (*Id.* at 5.)

Following the disciplinary hearing, the school board on May 14, 2007, decided to expel Davis for the remainder of the school year and the entirety of the 2007-08 school year. (*Id.*, Ex. D, Letter from Plainfield Comm. Cons. Sch. Dist. 202.)

## PROCEDURAL HISTORY

On July 10, 2007, Plaintiff filed this action in federal court[2] alleging: a claim that Defendants violated Davis's due process rights (Count I); a claim that Defendants violated Davis's civil rights, including discriminating against him based on his race (Count II); a claim for preliminary injunctive relief (Count III); and a claim for a temporary restraining order (Count

---

[2] Plaintiff filed a companion action in state court seeking administrative review of the school board's decision. Defendants have removed that action, asserting that this Court has supplemental jurisdiction over the claims raised therein. *See Brown v. Plainfield Comm. Cons. Sch. Dist. 202*, No. 07cv6153. On November 5, 2007, the Court dismissed that action without prejudice subject to: (1) a timely motion to remand; (2) the filing of a proper amended complaint in 07 C 3873 incorporating the state law claims; or (3) a voluntary dismissal of the suit with prejudice. (R. 6, Minute Entry.)

3

IV). (R. 1, Compl.) Plaintiff also filed a separate motion for a preliminary injunction that would require Defendants to enroll Davis in school while this suit is pending. (R. 10.) This Court denied the motion for preliminary injunction, concluding that Plaintiff failed to establish a likelihood of success on the merits or that the balance of harms weighed in her favor. *See Brown v. Plainfield Comm. Cons. Dist. 202*, 500 F. Supp. 2d 996 (N.D. Ill. 2007).

Plaintiff thereafter filed an Amended Complaint alleging procedural and substantive due process claims (Count I); a violation of unspecified "civil rights" (Count II); and a race discrimination claim (Count III). (R. 24.) Defendants now move to dismiss Count I of the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has not adequately alleged a violation of Davis's due process rights. (R. 29, Defs.' Mem. in Supp. of Mot. at 2-6.)

## LEGAL STANDARDS

In determining whether to grant a motion to dismiss, the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the Plaintiff's favor. Fed. R. Civ. P. 12(b)(6); *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007). Detailed factual allegations are not necessary, but merely reciting the elements of a cause of action is insufficient. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."); *Killingsworth v. HSBC Bank Nevada, N.A.*, ---F.3d---, 2007 WL 3307084, at *3 (7th Cir. Nov. 9, 2007) (observing that the Supreme Court in *Bell Atlantic*

4

"retooled federal pleading standards" such that a complaint must now contain "enough facts to state a claim to relief that is plausible on its face.").

To survive a motion to dismiss, a plaintiff must plead enough to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic*, 127 S. Ct. at 1974. "The pleading must contain something more [than] a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1964-65. Under *Bell Atlantic*, "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief." *EEOC v. Concentra Health Serv., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007). Further, "a plaintiff may unwittingly plead himself out of court by alleging facts that preclude recovery." *Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007).

## ANALYSIS

In Count I of the Amended Complaint, Plaintiff raises both procedural and substantive due process claims. We address each in turn.

### 1. Procedural Due Process

"[P]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Children possess a property and liberty interest in attending public school. *Goss v. Lopez*, 419 U.S. 565, 565 (1975). The state may not take away this right absent fundamentally fair procedures. *Id.* at 574. In *Goss*, the Supreme Court held that when a student risks being suspended for ten days or less, due process requires that the student be given "oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an

5

opportunity to present his version." *Id.* at 581. The Court declined to adopt a rule that students have a right to secure counsel or cross-examine witnesses at suspension hearings, but left open the possibility that hearings involving more severe punishments "may require more formal procedures." *Id.* at 584.

In *Remer v. Burlington Area School Dist.*, 286 F.3d 1007 (7th Cir. 2002), the Seventh Circuit upheld the four-year expulsion of a high school student and examined the due process procedures required at expulsion hearings. The Court held that a student facing an expulsion has a due process right to "notice of the charges against him, notice of the time of the hearing and a full opportunity to be heard." *Id.* at 1011-12. A student must be given a meaningful opportunity to be heard, but expulsion hearings need not "take the form of a judicial or quasi-judicial trial." *Id.* at 1010; *see also Lamb v. Panhandle Comm. Unit Sch. Dist. No. 2*, 826 F.2d 526, 528 (7th Cir. 1987) (when penalty tantamount to expulsion is involved, "the school authority must afford the student an opportunity to present evidence and argument in mitigation.").

Here, it is apparent from the Amended Complaint that Davis and his mother received notice of the charges against him; when the touching incident was first reported by Moye, Davis and his mother were both called to the dean's office to discuss the incident. (R. 24, Am. Compl., Ex. A, Summary of Hearing at 1-2.) Davis was also given notice of the hearing, since he and his mother were present at the hearing along with their attorney. (R. 24, Am. Compl., Ex. A, Summary of Hearing at 1-2.)

However, Plaintiff alleges that Davis was not given a fair hearing because he was not permitted to cross-examine the unnamed students who submitted witness statements. (*Id.* ¶¶ 31-38.) As stated above, *Goss* left open the possibility that "more formal procedures," such as the

6

right to cross-examine witnesses, may be required in the context of an expulsion hearing. The Seventh Circuit has not specifically decided whether there is a federal due process right to cross-examine witnesses at high school expulsion hearings. In the absence of any direct authority, the Court must proceed under the general rubric of *Mathews v. Eldridge*, 424 U.S. at 335. *Mathews* sets forth a flexible, policy-oriented balancing test to determine what process is due, and requires the Court to consider: (1) the interest that will be affected by the state action; (2) the risk of erroneous deprivation of this interest through the procedures used by the state and the probable value, if any, of additional procedural safeguards; and (3) the state's interest, including the fiscal and administrative burdens that the additional procedure would entail. *Mathews*, 424 U.S. at 335.

As for the first *Mathews* factor, there is no doubt that Davis has an important interest in attending school. *See Goss*, 419 U.S. at 565. Even though Davis will be permitted to return to school next year, his expulsion could damage his standing with classmates and teachers. *Id.* at 575. Further, having an expulsion on his record may have long term negative consequences with respect to later opportunities for higher education or jobs. *Id.*

As for the second *Mathews* factor, courts have recognized that the need for cross-examination in the school disciplinary setting is "somewhat muted by the fact that the veracity of a student account of misconduct by another student is initially assessed by a school administrator . . . who has, or has available to him, a particularized knowledge of the student's trustworthiness." *Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 924 (6th Cir. 1988). Thus, the process of cross-examining a student witness may often be duplicative of the evaluation process undertaken by the school administrator charged with investigating the

7

incident. *Id.* Moreover, in this case, it is apparent from the Amended Complaint that the student statements played only a small role in Davis's expulsion. While these statements provided a possible motive for Davis's touching of Moye, none of the students claimed to have witnessed either of the touching incidents. (R. 24, Am. Compl., Ex. B, Student Statements.) Instead the core evidence against Davis was Moye's testimony.

Throughout her testimony, Moye remained insistent that Davis had touched her and that the second incident was not accidental: she based this conclusion on the location of the touching (near the bottom of her buttocks); the fact that there was substantial space for Davis to pass without touching her; and the fact that Davis and his friend kept looking at her after the incident occurred. (*Id.*, Ex. A at 3-4.) Davis did not deny touching Moye, instead testifying that he did not recall doing so. (*Id.* at 4.) In light of this evidence, permitting cross-examination of the student witnesses would have had little probative value in determining what actually occurred in the classroom between Moye and Davis. *See B.S. ex rel. Schneider v. Bd of Sch. Trust., Fort Wayne Comm. Sch.*, 255 F. Supp. 2d 891, 900 (N.D. Ind. 2003) ("[T]he presence of corroborating evidence further diminishes the potential value of cross-examination at the expulsion hearing."). Under these circumstances, the risk of erroneous deprivation and the probable value of allowing cross-examination of the student witnesses was low.

The final *Mathews* factor is the state's interest. As courts have recognized, maintaining order in today's public high schools is no small task. *See New Jersey v. TLO*, 469 U.S. 325, 339 (1985) (observing that "drug use and violent crime in the schools have become major social problems."); *Newsome*, 842 F.2d at 925 ("Today's public schools face severe challenges in maintaining the order and discipline necessary for the impartation of knowledge."). Schools

8

have a strong interest in protecting students who come forward to report misconduct by their peers. "Without the cloak of anonymity, students who witness [classmate misconduct] will be much less likely to notify school authorities, and those who do will be faced with ostracism at best and perhaps physical reprisals." *Newsome*, 842 F.2d at 925; *see also B.S.*, 255 F. Supp. 2d at 900 ("[I]n light of the increasing challenges schools face in maintaining order and discipline, requiring schools to permit the confrontation of student witnesses or even to disclose their identities in expulsion hearings would be overly-burdensome and unrealistic.").

The Court also considers the administrative burden that would result from creating a right to cross-examination at school disciplinary proceedings. In a related context, the Seventh Circuit rejected a college student's claim that he had a right to counsel at his expulsion hearing, weighing the limited value of such a right against the cost to the school:

> [W]e do not think he is entitled to be represented in the sense of having a lawyer who is permitted to examine or cross-examine witnesses, to submit and object to documents, to address the tribunal, and otherwise to perform the traditional function of a trial lawyer. To recognize such a right would force student disciplinary proceedings into the mold of adversary litigation. The university would have to hire its own lawyer to prosecute these cases and no doubt lawyers would also be dragged in—from the law faculty or elsewhere—to serve as judges. The cost and complexity of such proceedings would be increased, to the detriment of discipline as well as of the university's fisc.

*Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993). We find these same concerns applicable here. Saddling high school administrators with the burden of overseeing the process of cross-examination, as well as the objections that would be raised to the form and content of cross-examination, "is to require of them that which they are ill-equipped to perform." *Newsome*, 842 F.2d at 926. Increasing the complexity of school disciplinary hearings would also divert time and

9

attention away from the administration's primary purpose: overseeing the educational process. *Id.*; *see also Boykins v. Fairfield Bd. of Educ.*, 492 F.2d 697, 701 (5th Cir. 1974) (observing that if the court were to recognize a right to cross-examination "we stand but a step away from the application of the *strictissimi juris* due process requirements of criminal trials to high school disciplinary processes. And if to high school, why not to elementary school? It will not do.").

Numerous other courts have balanced the competing interests at stake and concluded that high school students do not possess a federal due process right to cross-examine witnesses at expulsion hearings. *See Newsome*, 842 F.2d at 920 (high school student threatened with expulsion based on statements of classmates did not have due process right to learn their identities); *B.S.*, 255 F. Supp. 2d at 900 (student did not have procedural due process right to obtain names and cross-examine student witnesses at expulsion hearing); *Caston v. Benton Pub. Schs.*, No. 00-215, 2002 WL 562638 (E.D. Ark. Apr. 11, 2002) (school did not violate student's due process rights by refusing to let him cross-examine adverse student witnesses at his expulsion hearing); *Witvoet v. Herscher Comm. Unit Sch. Dist. 2*, No. 97-2243, 1998 WL 1562916 (C.D. Ill. May 27, 1998) (student had no right under federal due process principles to confront or cross-examine his accuser at expulsion hearing); *L.Q.A. v. Eberhart*, 920 F. Supp. 1208, 1219 (M.D. Ala. 1996) (no due process violation where school board considered written statements from student witnesses who were not subject to cross-examination at expulsion hearing), *aff'd*, 111 F.3d 897 (11th Cir. 1997). The Court finds the analysis of these courts persuasive.

In her opposition to the motion to dismiss, Plaintiff repeatedly cites to an Illinois case regarding due process rights in the school disciplinary context. This is the same case Plaintiff

relied on extensively in her motion for a preliminary injunction, and the Court specifically advised Plaintiff's counsel that Illinois case law is not binding on the Court's determination of Davis's *federal* due process rights. *See Brown*, 500 F. Supp. 2d at 1001 n.1. Counsel's continued reliance on Illinois case law demonstrates a fundamental misapprehension of federal due process principles. As the Seventh Circuit has explained:

> The due process clauses in the fifth and fourteenth amendments do not protect property rights unconditionally. They say that no one may 'be deprived of life, liberty, or property, without due process of law.' Due process usually means notice and an opportunity for a hearing. *State law defines property; federal law defines the process that is 'due.'*"

*Goros v. County of Cook*, 489 F.3d 857, 859 (7th Cir. 2007) (emphasis added); *see also Osteen*, 13 F.3d at 225 ("The standard of due process is federal.") Accordingly, it is federal law and not state law that governs this Court's resolution of Plaintiff's due process claims.[3] For the reasons fully explained above, the Court concludes that Davis did not possess a federal due process right to cross-examine the student witnesses at his disciplinary hearing, and Plaintiff's allegations therefore fail to state a claim for relief.

Plaintiff's remaining allegations are that the school board failed to adhere to various procedural rules contained in the school's student handbook and the Illinois School Code, 105 ILCS 5/10-22.6. (R. 24, Am. Compl. ¶¶ 40-56, 76-78.) These claims fail as a matter of law. In the words of the Seventh Circuit: "As we tirelessly but unavailingly remind counsel in this Court,

---

[3] Even if Illinois cases were relevant to this Court's determination, the *Camlin* case, cited at least 10 times in Plaintiff's opposition, does not stand for the broad principle that cross-examination is required at every high school disciplinary hearing. *See Camlin v. Beecher Cmty. Sch. Dist.*, 791 N.E.2d 127 (Ill. App. Ct. 2003). Instead, in *Camlin* the court held that the student did not receive adequate notice of the hearing because he was not given "any information about the identity of his accuser or the nature of the specific charge." *Id.* at 131.

a violation of state law . . . is not a denial of due process, even if the state law confers a procedural right." *Osteen*, 13 F.3d at 225. To the extent Plaintiff is attempting to assert a claim that the school board's actions were such a departure from established rules that they constitute arbitrary government action, that claim will be addressed within the ambit of the substantive due process analysis below.

In summary, the Amended Complaint makes clear that Davis was given an opportunity to provide his version of events and to offer evidence in his defense. (*Id.*, Ex. A at 2-4.) Further, his attorney was allowed to question Moye and to make arguments as to why Davis should not be expelled. (*Id.* 3-6.) These procedures satisfied the requirement that Davis be given a meaningful opportunity to be heard. *Remer*, 286 F.3d at 1012; *Lamb*, 826 F.2d at 528. Thus, the Court concludes that Plaintiff has failed to allege a cognizable procedural due process claim.

## 2. Substantive Due Process

The touchstone of substantive due process is the "protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). However, "only the most egregious official conduct is arbitrary in the constitutional sense." *Remer*, 286 F.3d at 1013. To violate substantive due process, a defendant's conduct must "shock the conscience" and be "unjustifiable by any governmental interest." *See id.* This is a high standard, and "[c]ases abound in which the government action—though thoroughly disapproved of—was found not to shock the conscience." *See Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (collecting cases).

A substantive due process violation will be found in the context of a school disciplinary hearing only where the plaintiff demonstrates that defendants acted in an "extraordinary

12

departure from established norms." *Dunn v. Fairfield Comm. High Sch.*, 158 F.3d 962, 966 (7th

Cir. 1998). The Supreme Court has described the limited role of the federal court in assessing a

substantive due process challenge to a school board's disciplinary decision:

> It is not the role of the federal courts to set aside decisions of school
> administrators which the court may view as lacking a basis in
> wisdom or compassion. Public high school students do have
> substantive and procedural rights while at school . . . But § 1983
> does not extend the right to relitigate in federal court evidentiary
> questions arising in school disciplinary proceedings or the proper
> construction of school regulations. The system of public education
> that has evolved in this Nation relies necessarily upon the discretion
> and judgment of school administrators and school board members
> and § 1983 was not intended to be a vehicle for federal court
> correction of errors in the exercise of that discretion which do not
> rise to the level of violations of specific constitutional guarantees.

*Wood v. Strickland*, 420 U.S. 308, 326 (1975). The bulk of Plaintiff's allegations fall within this

prohibited category, as she is essentially seeking to relitigate evidentiary questions and the proper

construction of various school regulations.[4] (*See* R. 24, Am. Compl. ¶¶ 39-78; R. 32, Pl.'s Opp.

at 8-10.) These allegations fail to state a claim for a violation of substantive due process.

Although the Amended Complaint is not a model of clarity, Plaintiff also appears to be

claiming that the school board so far departed from its own rules that its actions were arbitrary.

(*See id.* ¶¶ 67-74.) For instance, Plaintiff alleges that under the school's handbook and the

Illinois School Code ("School Code"), 105 ILCS 5/10-22.6, Davis should not have been given

_____

[4] The Court is baffled by Plaintiff's argument that state law governs the analysis of whether
Davis's substantive due process rights were violated. (*See* R. 32, Pl.'s Opp. at 7) ("Plaintiff's
substantive state law rights to an education for Davis requires the Court to step into the shoes of
the Illinois Supreme Court and determine whether Plaintiff's rights were violated under Illinois
law.") In support of this argument, Plaintiff's counsel relies on cases applying *Erie Railroad Co.
v. Tompkins*, 304 U.S. 64 (1938). (R. 32, Pl.'s Opp. at 6-7.) It hardly bears repeating that the
*Erie* doctrine applies to diversity cases, while this case is premised on federal question
jurisdiction.

13

more than a suspension for his actions. (R. 24, Am. Compl. ¶¶ 51-56.) However, the School
Code gives the board authority to expel a student for up to two years, and both the handbook and
the School Code afford the board considerable discretion to make an appropriate disciplinary
decision in light of the individual circumstances of each case. 105 ILCS 5/10-22.6(d); R. 24,
Am. Compl., Ex. C, Handbook at 41. Plaintiff also alleges that the hearing officer failed to make
a recommendation to the school board in violation of 5/10-22.6; however, there is nothing in the
statutory provision cited by Plaintiff that requires a hearing officer to make a recommendation to
the school board. *See* 105 ILCS 5/10-22.6(a) ("If a hearing officer is appointed by the board he
shall report to the board a written summary of the evidence heard at the meeting and the board
may take such action thereon as it finds appropriate."). In short, the Amended Complaint fails to
raise a plausible claim that the school board's actions constituted an extraordinary departure from
established norms.

To the extent Plaintiff is also claiming that the punishment Davis received was overly
harsh and thus arbitrary, it is not the role of this Court to substitute its judgment for that of the
school board regarding an appropriate penalty for Davis's actions. *See Wood,* 420 U.S. at 326;
*see also Lamb,* 826 F.2d at 528 ("the meting out of disciplinary punishment is a matter left
largely to the discretion of the school authorities"). Even if Plaintiff is correct that the school
board could have imposed a lesser sentence, the school board's conduct, as alleged in the
Amended Complaint, falls far short of shocking the conscience. *See Tun,* 398 F.3d at 904
("Although individual school district employees overreacted and gave overly broad reading to
district's behavior code, their actions did not rise to conscience-shocking level"); *Dunn,* 158 F.3d
at 963 (no substantive due process violation where students received failing grades for playing

14

two unauthorized pieces at band concert, even though school officials "may have overreacted" in imposing punishment). Although Davis received a harsh punishment, there was evidence before the school board that he committed a serious infraction: the unwanted touching of a teacher's intimate body part. Imposing a harsh penalty for such an offense could reasonably be viewed as necessary to deter student misconduct and ensure a safe learning environment for both students and teachers. *See New Jersey*, 469 U.S. at 350 ("Without first establishing discipline and maintaining order, teachers cannot begin to educate their students.") (Powell, J., concurring).

For these reasons, the Court concludes that Plaintiff has failed to allege a cognizable substantive due process claim.

## CONCLUSION

Defendants' partial motion to dismiss (R. 28) is granted, and Count I of the Amended Complaint is dismissed with prejudice. The parties are directed to reevaluate their respective settlement positions in light of this opinion and to undertake new efforts to settle this case. A status hearing will be held in open court on **December 13, 2007** at **9:45 a.m.**

Entered:

**Judge Ruben Castillo**
**United States District Court**

Dated: November 27, 2007

15