Attorney No. 3122002

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHARLENE BROWN, individually and as<br>mother of DEVONTA DAVIS, a minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| PLAINFIELD COMMUNITY CONSOLIDATED<br>SCHOOL DISTRICT 202, JOHN HARPER,<br>Superintendent of Plainfield Community<br>Consolidated School District 202, BOARD OF<br>EDUCATION OF PLAINFIELD COMMUNITY<br>CONSOLIDATED SCHOOL DISTRICT 202 and<br>RON KAMZAR, MICHAEL KELLY, ROD<br>WESTFALL, STUART BLEDSOE, ROGER<br>BONUCHI, VICTORIA EGGERSTEDT and<br>DAVE OBRZUT, as members of the BOARD OF<br>EDUCATION OF PLAINFIELD COMMUNITY<br>CONSOLIDATED SCHOOL DISTRICT 202, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 07 C 3873<br><br>**JURY DEMAND**<br><br>Judge Ruben Castillo |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Now comes Plaintiff, Charlene Brown, individually and as mother of Devonta Davis, a minor, by Pinzur, Cohen and Kerr, Ltd., her attorneys, praying for a permanent injunction and damages against Defendants, Plainfield Community Consolidated School District 202, Board of Education of Plainfield Community Consolidated School District 202, Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt, and Dave Obrzut, as members of the Board of Education of Plainfield Community Consolidated School District 202 and John Harper, Superintendent of Plainfield Community Consolidated School District 202, and states:

## COUNT II - DISCRIMINATION BASED UPON RACE

1.  Plaintiff, Charlene Brown (hereinafter referred to as "Plaintiff"), individually and as mother of Devonta Davis, a minor (hereinafter referred to as "Minor Plaintiff"), is a resident of Romeoville, Will County, Illinois.

2.  Defendant, Plainfield Community Consolidated School District 202 (hereinafter referred

to as "District 202"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North High School (hereinafter referred to as "Plainfield North").

3. Defendant, Board of Education of Plainfield Community Consolidated School District 202 (hereinafter referred to as the "Board"), is organized under the laws of the State of Illinois as the governing body responsible for the operation of Plainfield North.

4. Defendant, Ron Kamzar, is a Member of the Board of Education of District 202.

5. Defendant, Michael Kelly, is a Member of the Board of Education of District 202.

6. Defendant, Rod Westfall, is a Member of the Board of Education of District 202.

7. Defendant, Stuart Bledsoe, is a Member of the Board of Education of District 202.

8. Defendant, Roger Bonuchi, is a Member of the Board of Education of District 202.

9. Defendant, Victoria Eggerstedt, is a Member of the Board of Education of District 202.

10. Defendant, Dave Obrzut, is a Member of the Board of Education of District 202.

11. Ron Kamzar, Michael Kelly, Rod Westfall, Stuart Bledsoe, Roger Bonuchi, Victoria Eggerstedt and Dave Obrzut collectively are the Board of Education of District 202 (hereinafter collectively referred to as "Board").

12. Defendant, John Harper, is the Superintendent of District 202.

13. Jurisdiction over the cause of action is conferred upon this Court pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

14. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec. 1391(b), because the Defendants are located and/or reside in this District and a subsequent part of the claim giving rise to this cause of action occurred in this District.

15. At all relevant times herein, District 202 maintained and controlled Plainfield North High School (hereinafter "School"), located at 12005 South 248th Avenue, Plainfield, Will County, Illinois.

16. On or about April 23, 2007, Laura Moye (hereinafter referred to as "Moye") was an employee of District 202.

17. On or about April 23, 2007, Moye was employed by District 202 as a teacher at Plainfield

2

North.

18. Moye was a first-year teacher during the 2006 - 2007 school year. *See*, Summary of Hearing, attached hereto and incorporated herein as Exhibit "A", Page 3.

19. Moye taught Computer Applications during the 2006 - 2007 school year.

20. On or about April 23, 2007, Minor Plaintiff was fourteen (14) years old.

21. During the 2006 - 2007 school year, Minor Plaintiff was a student at Plainfield North.

22. During the 2006 - 2007 school year, Minor Plaintiff was in the ninth (9th) grade, as a Freshman.

23. Minor Plaintiff was a student in Moye's Computer Applications class during said school year.

24. On or about April 23, 2007, Moye alleged she believed Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See*, Exhibit "A", Page 3.

25. Moye alleged she believed, the week prior to April 23, 2007, Minor Plaintiff brushed her buttocks with the back of his hand. *See*, Exhibit "A", Page 3.

26. Moye alleged she had not given the alleged first incident another thought until the alleged second incident allegedly occurred. *See*, Exhibit "A", Page 3.

27. Minor Plaintiff denied and continues to deny any such contact was made upon the person of Moye as alleged by Moye.

28. On or about May 2, 2007, a Disciplinary Hearing (hereinafter referred to as "Hearing") was conducted concerning the alleged conduct of Minor Plaintiff. *See*, Exhibit "A", Page 1.

29. On or about May 14, 2007, following the alleged first time offense by Minor Plaintiff, the Board expelled Minor Plaintiff for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year.

30. On or about May 17, 2007, the District 202 Director of Administration and Personnel, Mark Heiss, wrote Plaintiff correspondence stating Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and for the entirety of the 2007 - 2008 school year. *See*, May 17, 2007 correspondence to Charlene Brown from Mark Heiss (hereinafter referred to as "Correspondence") attached hereto and incorporated herein as Exhibit "B".

3

31.  Said Correspondence stated Minor Plaintiff was expelled for the remainder of the 2006 - 2007 school year and the entirety of the 2007 - 2008 school year. *See*, Exhibit "B".

32.  Said Correspondence stated Minor Plaintiff was expelled by the Board because Minor Plaintiff "had been inappropriate with one of his teachers." *See*, Exhibit "B".

33.  The expulsion was pretextual.

34.  The race of Minor Plaintiff and Plaintiff is African American.

35.  The School Board's Decision discriminated against Minor Plaintiff based upon his race as an African American (hereinafter referred to as "Black").

36.  Minor Plaintiff was treated different than other similarly situated students because of his race.

37.  On information and belief, similarly situated non-Black students were afforded lesser punishments for more severe behavior including, but not limited to, assignment to the *Catalyst Program*, in school suspensions, expulsions for lesser time periods, assignment to the alternative School.

38.  The right to an education is a property interest vested to Minor Plaintiff by Illinois Statute pursuant to the Illinois Constitution.

39.  Due to the expulsion, Minor Plaintiff has been denied his property interest to an education at School and District 202 in derogation of his statutory and constitutional rights.

40.  Unless Defendants are enjoined to reverse Minor Plaintiff's expulsion, Minor Plaintiff will be irreparably harmed by (among other things):

   A.  Damage to Minor Plaintiff's standing and association with the community.

   B.  Damage to Minor Plaintiff's personal reputation.

   C.  Damage to Minor Plaintiff's ability to obtain higher education should a college or university deny its acceptance of him on the basis of the Defendants' actions.

   D.  Denial of Minor Plaintiff's rights to an education and to complete his high school years in good standing at School and District 202.

   E.  Denial of Minor Plaintiff's rights to attend a Public High School in Plainfield, Illinois.

4

41. Expulsion of Minor Plaintiff has further caused damage to Minor Plaintiff's education and to his reputation.

42. On information and belief, only 7.2% of the student population of District 202 is Black.

43. On information and belief, substantially more than 7.2% of the students expelled by District 202 in recent years are Black.

44. During August, 2007, Plaintiff's attorney, Robert S. Pinzur, orally requested of Defendants' attorney, Brian McCarthy, a list of the percentages of students expelled by District 202 during recent years by race discrimination.

45. During October 20, 2007, Plaintiff's attorney, Robert S. Pinzur, requested, in writing, from Defendants the racial break down of students expelled from District 202 since 2000.

46. Defendants have objected and refuse to provide the racial break down of students expelled from District 202 since 2000.

47. Plaintiff has incurred and will continue to incur substantial attorney fees and costs in this cause.

Wherefore, Plaintiff, Charlene Brown, individually and as mother of Devonta Davis, a minor, and Minor Plaintiff, Devonta Davis, respectfully request this Court:

A. Award Plaintiff reasonable damages against the Defendants.

B. Award Plaintiff damages against the Defendants in an amount sufficient to deter future constitutional violations.

C. Award Plaintiff reasonable attorney fees and costs incurred during this action.

D. Grant such other and further relief this Court deems just and appropriate.

## COUNT II - PERMANENT INJUNCTIVE RELIEF - ABUSE OF DISCRETION

1. This proceeding is brought pursuant to common law *certiorari*. *Washington v. Board Of Education, School district 215, et al.,* 248 Ill. App.3d 534; 618 N.E.2d 561; 1993 Ill. App. LEXIS 835; 187 Ill. Dec. 970 (1993); *Linwood v. Board Of Education Of The City Of Peoria, et al.,* 463 F.2d 763 (1972).

2. Jurisdiction over the cause of action is conferred upon this Court pursuant to the removal of the State Court proceeding pursuant to 28 U.S.C. Sec. 1331, 1367 (Supplemental Jurisdiction), 1441, 1446(e).

3.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec. 1391(b), because the Defendants are located and/or reside in this District and a subsequent part of the claim giving rise to this cause of action occurred in this District.

4.     Plaintiffs reside at 380 Richmond Drive, Romeoville, Will County, Illinois.

5.     Defendants' principal places of business are located at 15732 Howard Street, Plainfield, Will County, Illinois.

6.     At all relevant times herein, District 202 maintained and controlled Plainfield North High School (hereinafter referred to as "School"), located at 12005 South 248th Avenue, Plainfield, Will County, Illinois.

7.     On or about April 23, 2007, Laura Moye (hereinafter referred to as "Moye") was an employee of District 202.

8.     On or about April 23, 2007, Moye was employed by District 202 as a teacher at Plainfield North High School.

9.     Moye taught computer applications during the 2006-2007 school year.

10.     During the 2006-2007 school year, Minor Plaintiff was a student at Plainfield North High School.

11.     Minor Plaintiff was a student in Moye's computer applications class during said school year.

12.     On or about April 23, 2007, Moye alleged she "believed" Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See,* Summary of Hearing, attached hereto and incorporated herein as Exhibit "A", page 6.

13.     Moye alleged she "believed", the week prior to April 23, 2007, Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See,* Exhibit "A", page 6.

14.     Moye alleged she had not given the first alleged incident another thought until the alleged second incident allegedly occurred. *See,* Exhibit "A", page 6.

15.     Minor Plaintiff denied and continues to deny any such contact was made upon the person of Moye as alleged by Moye.

16.     On May 2, 2007, a disciplinary hearing was held concerning Minor Plaintiff.

17.     On May 14, 2007, a final Administrative decision was rendered by School Board

affecting the rights of Minor Plaintiff.

18. On May 17, 2007, Plaintiff was informed of School Board's final decision to expel Minor Plaintiff. A copy of said May 17, 2007 correspondence is attached hereto and incorporated herein as Exhibit "B".

19. Said correspondence stated Minor Plaintiff was expelled by the Board because Minor Plaintiff "had been inappropriate with one of his teachers". *See*, Exhibit "B".

20. Said correspondence stated Minor Plaintiff was expelled for the remainder 2006-2007 school year and the entirety of the 2007-2008 school year. *See,* Exhibit "B".

21. The Illinois School Code mandates the Illinois School Board act within its discretion when expelling a student who is guilty of gross disobedience or misconduct.

22. The School Board's decision to expel Minor Plaintiff was an abuse of the School Board's discretion.

23. The School Board abused its discretion in expelling Minor Plaintiff for the following reasons:

    A. The alleged conduct of Minor Plaintiff, even if true, does not raise to the level of egregiousness to qualify as sexual harassment per the School Board's definition of sexual harassment.

    B. Minor Plaintiff's high school discipline history does not consist of any incidents involving sexual harassment or conduct of a sexual nature.

    C. Minor Plaintiff's high school discipline history, consisting of three minor referrals and one referral for inappropriate language, will not affect the delivery of educational services to other children.

    D. The punishment rendered by the School Board, expulsion for the remainder of the 2006-2007 school year and the entirety of the 2007-2008 school year is severe.

    E. The interests of Minor Plaintiff, that he be afforded a quality education, are severely disadvantaged by the School Board's decision.

24. Minor Plaintiff has and will continue to suffer irreparable harm if the School Board's decision is allowed to stand.

25. The Facts provided by the School Board did not support the imposition of the most drastic remedy available under the Illinois School Code.

26.     Plaintiffs have and will continue to incur substantial attorney fees and costs in pursuing relief herein.

        Wherefore, Plaintiffs, Charlene Brown, individually and as mother of Devonta Davis, a minor, pray for the following relief against all Defendants:

        A.      Permanently enjoin Defendants from expelling Minor Plaintiff from school.

        B.      Permanently enjoin Defendants from conducting any further disciplinary proceedings against Minor Plaintiff.

        C.      Enter an Order re-instating Minor Plaintiff in Plainfield North High School immediately.

        D.      Award reasonable attorney fees and costs in favor of Plaintiff.

        E.      Additional relief as this Court deems equitable and appropriate.

## COUNT III - PERMANENT INJUNCTIVE RELIEF - AGAINST MANIFEST WEIGHT OF EVIDENCE

1.      This proceeding is brought pursuant to common law *certiorari*. *Washington v. Board Of Education, School district 215, et al.,* 248 Ill. App.3d 534; 618 N.E.2d 561; 1993 Ill. App. LEXIS 835; 187 Ill. Dec. 970 (1993); *Linwood v. Board Of Education Of The City Of Peoria, et al.*, 463 F.2d 763 (1972).

2.      Jurisdiction over the cause of action is conferred upon this Court pursuant to the removal of the State Court proceeding pursuant to 28 U.S.C. Sec. 1331, 1367 (Supplemental Jurisdiction), 1441, 1446(e).

3.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. Sec. 1391(b), because the Defendants are located and/or reside in this District and a subsequent part of the claim giving rise to this cause of action occurred in this District.

4.      Plaintiffs reside at 380 Richmond Drive, Romeoville, Will County, Illinois.

5.      Defendants' principal places of business are located at 15732 Howard Street, Plainfield, Will County, Illinois.

6.      At all relevant times herein, District 202 maintained and controlled Plainfield North High School (hereinafter referred to as "School"), located at 12005 South 248th Avenue, Plainfield, Will County, Illinois.

7.  On or about April 23, 2007, Laura Moye (hereinafter referred to as "Moye") was an employee of District 202.

8.  On or about April 23, 2007, Moye was employed by District 202 as a teacher at Plainfield North High School.

9.  Moye taught computer applications during the 2006-2007 school year.

10. During the 2006-2007 school year, Minor Plaintiff was a student at Plainfield North High School.

11. Minor Plaintiff was a student in Moye's computer applications class during said school year.

12. On or about April 23, 2007, Moye alleged she "believed" Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See,* Summary of Hearing, attached hereto and incorporated herein as Exhibit "A", page 6.

13. Moye alleged she "believed", the week prior to April 23, 2007, Minor Plaintiff brushed her buttocks with the back of Minor Plaintiff's hand. *See,* Exhibit "A", page 6.

14. Moye alleged she had not given the first alleged incident another thought until the alleged second incident allegedly occurred. *See,* Exhibit "A", page 6.

15. Minor Plaintiff denied and continues to deny any such contact was made upon the person of Moye as alleged by Moye.

16. On May 2, 2007, a disciplinary hearing was held concerning Minor Plaintiff.

17. On May 14, 2007, a final Administrative decision was rendered by School Board affecting the rights of Minor Plaintiff.

18. On May 17, 2007, Plaintiff was informed of School Board's final decision to expel Minor Plaintiff. A copy of said May 17, 2007 correspondence is attached hereto and incorporated herein as Exhibit "B".

19. Said correspondence stated Minor Plaintiff was expelled by the Board because Minor Plaintiff "had been inappropriate with one of his teachers". *See,* Exhibit "B".

20. Said correspondence stated Minor Plaintiff was expelled for the remainder 2006-2007 school year and the entirety of the 2007-2008 school year. *See,* Exhibit "B".

21. The Illinois School Code mandates the Illinois School Board act within its discretion

when expelling a student who is guilty of gross disobedience or misconduct.

22. The School Board's decision to expel Minor Plaintiff was against the manifest weight of the evidence.

23. The School Board's decision to expel Minor Plaintiff is against the manifest weight of the evidence for the following reasons:

   A. Laura Moye testified her "belief" Minor Plaintiff touched her buttocks with the back of his hand was heightened when Moye observed Minor Plaintiff and another student talking and looking at Laura Moye.

   B. Laura Moye was unable to confirm, with another female student, Minor Plaintiff was discussing Laura Moye. The only finding of fact made by the School Board at the expulsion hearing was Minor Plaintiff, while returning to Minor Plaintiff's seat from the classroom printer, passed by Laura Moye.

   C. The School Board made a finding of fact Laura Moye only believed Minor Plaintiff touched Laura Moye's buttocks with the back of Minor Plaintiff's hand.

   D. Said alleged touching of Laura Moye's buttocks was not observed by any other students present in the classroom on April 23, 2007.

   E. The School Board has failed to put forth any evidence, aside from Laura Moye's speculative belief, fairly tending to support Laura Moye's claim Minor Plaintiff brushed Laura Moye's buttocks with the back of Minor Plaintiff's hand.

24. Minor Plaintiff has and will continue to suffer irreparable harm if the School Board's decision is allowed to stand.

25. The Facts provided by the School Board did not support the imposition of the most drastic remedy available under the Illinois School Code.

26. Plaintiffs have and will continue to incur substantial attorney fees and costs in pursuing relief herein.

   Wherefore, Plaintiffs, Charlene Brown, individually and as mother of Devonta Davis, a minor, pray for the following relief against all Defendants:

   A. Permanently enjoin Defendants from expelling Minor Plaintiff from school.

   B. Permanently enjoin Defendants from conducting any further disciplinary proceedings against Minor Plaintiff.

C.   Enter an Order reinstating Minor Plaintiff in Plainfield North High School immediately.

D.   Award reasonable attorney fees and costs in favor of Plaintiff.

E.   Additional relief as this Court deems equitable and appropriate.

_Robert S. Pinzur_

Pinzur, Cohen & Kerr, Ltd.

Robert s. Pinzur
Pinzur, Cohen & Kerr, Ltd.
Attorney No.: 3122002
Attorney for Plaintiff
Suite 208
4180 RFD Route 83
Long Grove, IL 60047
847/821-5290
847/821-5293 (fax)

11

## EXHIBIT LIST

Exhibit "A":     Summary Of Hearing.

Exhibit "B":     May 17, 2007 Correspondence to Charlene Brown from Mark Heiss.

**EXHIBIT___A___**

## SUMMARY OF HEARING

A disciplinary hearing was conducted on May 2, 2007 concerning Devonta Davis, a fourteen year old freshman at Plainfield North High School. Devonta was accompanied to the hearing by his mother, Charlene Brown and their attorney, Robert Pinzur. The administration was represented by Assistant Principal Matt Ambrose and Dean Mark Hudson and the district's attorney, Paul Denham. Also present were Laura Moye, a business teacher and Robert Fritch, her department chair.

On April 24, 2007, Business Department chair Robert Fritch advised Assistant Principal Matt Ambrose that Devonta Davis may have been inappropriate with one of his teachers, Laura Moye, during her sixth period computer class the day before (April 23). At the request of Mr. Ambrose, Ms. Moye prepared a statement, which led to the administration's investigation and, eventually, the hearing of May 2, 2007.

Ms. Moye's statement is included in the packet at tab 9. She relates two instances in the days prior to April 24, 2007 in which Devonta walked past her in the computer lab, both times with the back of his hand brushing across her bottom. She relates that the first instance was ignored by her because she assumed it was a mistake and was the sort of thing that would happen when students are retrieving papers from the printer and the aisles get crowded.

When the same thing happened again on April 23, 2007, Ms. Moye became concerned. In part, she believes that the second incident could not have been a mistake because there was more than sufficient room (four feet) for Devonta to pass without coming into contact with her. Her suspicion that something more than mere accident was in play was heightened when, later that same class period, she observed Devonta and one of his friends talking and continuing to look up at her while doing so.

After the class on April 23, 2007 ended, Ms. Moye spoke with a female student who sat near Devonta and the friend with whom Devonta had been speaking. Ms. Moye inquired if the female student had overheard the conversation between Devonta and the other student and if it was about Ms. Moye. The student told Ms. Moye that she didn't overhear that conversation, but added that the week prior, Devonta had mentioned that Ms. Moye "had a nice butt" when she bent down to pick up a piece of paper. The female student also reported that during that same week, Devonta made a comment when Ms. Moye stood on the counter top to adjust the ceiling-mounted projector as well.

Devonta was called to the office to discuss the matter. Devonta did not remember brushing up against Ms. Moye on any occasion. Devonta declined to prepare a written statement, saying that his mother forbade him from writing anything down without her being present. When Dean Hudson learned this, he called Devonta's mother, Charlene Brown, who confirmed that she had given her son those instructions. Ms. Brown made arrangements to come to the school later that day.

MAY-22-2007  07:28        FRANCZEK SULLIVAN P C                    3129869672    P.03/10

FROM :                          FAX NO. :8152304551          May. 22 2007 07:29AM P3

Devonta Davis
May 2, 2007 Hearing Report
Page 2

When Ms. Brown arrived, Dean Hudson discussed the situation with Devonta and his mother. Because Ms. Brown declined to permit Devonta to write anything, Dean Hudson took notes of Devonta's responses and prepared the page at tab 8. In essence, Devonta stated that he did, in fact, retrieve a piece of paper from the printer and that when he turned to enter the aisle, Ms. Moye was exiting it. Devonta did not recall any contact with Ms. Moye at that time and he also denied saying anything to another student in the classroom.

Students identified as "A" "B" and "C" provided statements to Mr. Hudson. The letters assigned to the students correspond to the locations of the students with the same letter labels in the drawing prepared by Mr. Hudson that is at tab 8. Student A reported hearing Devonta say "Hey, Chris, Ms. Moye looks fine today, doesn't she?" Student B provided no quotes, but recalled Devonta commenting on how good Ms. Moye looked and how she was his wife. Student B also reported that Devonta used to talk about how sexy Ms. Moye was, but added that he also frequently used street talk that Student B didn't understand.  Student C recalled Devonta commenting that Ms. Moye was sexy, had a big butt, a nice body and that he wanted to take her out on a date. Student C also recalled Devonta expressing hope that Ms. Moye didn't have a boyfriend.

The administration's presentation concluded with the walk-through of the hearing packet, with Dean Hudson describing each of the other documents in the packet. Virtually every document drew an objection from Devonta's attorney, the summary of which is provided in the attached table.

**Charlene Brown,** Devonta's mother, testified first for the defense. Her testimony was primarily focused on three areas: her upbringing of, and expectations for Devonta; a prior discipline incident; and the suspension notice and expulsion hearing letters.

With regard to the letters, Ms. Brown testified that she never received them. When she initially reported this to Mark Hudson, he placed a duplicate copy in the folder with Devonta's homework, but it appears that the homework bag was not picked up. It appears that there may have been other communication between Mr. Hudson and Ms. Brown regarding both the setting of the hearing, the fact of Devonta's suspension and Ms. Brown's non-receipt of the letters. The hearing officer did not believe the issue needed to be cleared up since Devonta's attorney advised that he did receive copies of both letters from the administration immediately upon requesting a fax of the same. More importantly, Devonta's counsel advised that he had no objection to proceeding with the hearing as scheduled.

Ms. Brown testified that outside of school, Devonta was devoted to sports and athletics of all sorts and is active in the teen ministry at his church, along with other church-related activities.  She denied ever receiving reports or complaints concerning inappropriate behavior by Devonta.

Devonta Davis
May 2, 2007 Hearing Report
Page 3

Regarding the past discipline matter, Ms. Brown testified that she was aware that Devonta had asked a friend if a rumor he heard was true, which led to Devonta being disciplined. It is apparent that Ms. Brown believes that Devonta was wrongly disciplined for the incident. Ms. Brown explained that her understanding of the situation was that Devonta had heard a rumor from a friend about a girl that both students knew. The rumor was that the girl "gave good head" and Devonta asked her if that was true, and if not, why was "Mike" saying it and why not take it to a Dean. Ms. Brown's understanding is that the girl became upset with Devonta for asking about the situation and instead of going to the Dean about the other student, complained to the Dean about Devonta.

Ms. Brown further explained that after the incident, she met with the Principal and others about that situation. It was Ms. Brown's position that the entire incident was a misunderstanding since it was Devonta who was trying to help the girl, not discuss or pass along the rumor. Following that discussion, the Principal agreed to reclassify the incident as one of merely "inappropriate language" rather than sexual harassment.

Dean **Mark Hudson** was next examined by Devonta's counsel. He acknowledged that being a fourteen year old boy can be difficult and that boys of that age can, and are, intrigued by chatter about sexual matters.

Ms. **Laura Moye** was next questioned. She acknowledged that Devonta does well in class, works hard and helps others who need it. She previously had a problem with Devonta last semester in which he would be speaking at inappropriate times. That situation was addressed by Devonta's mother.

Ms. Moye acknowledged that she is a first year teacher. She rebuffed counsel's several attempts to suggest that she misunderstood or mistook the incident. One particular line of questioning concerned other instances in her life in which she had been bumped or touched by others. Ms. Moye testified that she did not recall much, if anything, in terms of the specifics of other such incidents. She insisted that the two incidents with Devonta, particularly the more recent one, were "different" from those other instances. She could not specify in detail what made them different, other than that they "felt" different to her and produced a different feeling on her part. As part of the explanation, she pointed out that in most of the other circumstances, there would be a touching of some sort that would be immediately followed by an apology or other utterance. Later, she added that the location of the touching, which she located near the bottom of her buttocks, did not seem to her to be an area that would likely be accidentally contacted.

Another line of questioning concerned counsel's effort to establish that Ms. Moye had simply mistaken the situation. In that area of questioning, Ms. Moye acknowledged that if the second incident had not occurred, she would never have given the first incident another thought. She declined to admit even that it was "possible" that she was mistaken regarding the second incident, both because of the availability of substantial space for Devonta to pass without contact and the subsequent conversation she observed between

Devonta Davis
May 2, 2007 Hearing Report
Page 4

Devonta and Devonta's friend in class that included both of them frequently looking at her after the incident occurred.

Ms. Moye denied that there was any laughter or outburst in the room after Devonta brushed by her. She also testified that she was not grabbed, but believes that she was brushed by the back of Devonta's hand on both occasions. Ms. Moye denied counsel's suggestion that perhaps Devonta didn't even realize he had touched her, commenting: "I doubt it."

Devonta's counsel also inquired as to what consequence she thought Devonta should suffer for this event. Ms. Moye replied that she felt that she had been sexually harassed, disrespected and humiliated and that the usual consequences of such acts, whatever they may be, should be employed.

**Devonta Davis** was questioned next. He was led through a series of questions and answers, the essence of which was that he did not recall coming in to contact with Ms. Moye on either occasion. His counsel led him through testimony that if such touching had occurred, it was not his intention to cause Ms. Moye any harm, discomfort or harassment and he offered an apology in that instance, which Ms. Moye accepted with curt thanks.

Devonta also testified that sports are his passion and the principal source of his motivation for school. This year, he played basketball, ran track and played football. His involvement was mostly at the freshman level, but he did play on the sophomore basketball team.

Devonta testified that he did not recall signing the student handbook receipt page that is at tab 15. He did not recall spending a PE class period going over the content of the handbook, but he did acknowledge receiving the handbook. He also testified on cross examination that he was aware that sexual harassment was not permitted at school.

Devonta denied ever saying anything inappropriate about Ms. Moye.

With regard to the prior incident involving the female student and the rumor, Devonta was questioned about the discipline report entry for March 1, 2007. That entry reads:

> Devonta announced to the class, "Do you want to hear the rumor I heard about Sydnei?" "I heard Sydnei gives good head."

Devonta testified that he said the words in quotes, but claims that he said them to Sydnei directly. He explained that he was trying to make her aware of what others were saying so that she could confront the others or secure the assistance of a Dean in making the rumor stop. He acknowledged that Sydnei's reaction to his question was a negative one

MAY-22-2007  07:28          FRANCZEK SULLIVAN P C                    3129869672      P.06/10

FROM :                        FAX NO. :8152304551          May. 22 2007 07:30AM P6

Devonta Davis
May 2, 2007 Hearing Report
Page 5

and that she became upset and yelled at him. Devonta also reports that she told him that
she did not know the person who Devonta claims said it first.

*     *     *     *     *

Devonta's testimony concluded the presentation of facts in this hearing. The attorneys
were then each given the opportunity to present a closing argument. Although the
following is not fact or evidence, the manner in which the attorneys characterized the
evidence and wove it together may be useful to the board in making a decision in this
case. I am therefore providing the following summaries of the closing arguments and the
two attorneys' conclusions as to what the evidence shows.

The **district's counsel** argued that Ms. Moye was very credible, that there were two
separate incidents involving Ms. Moye and that only in the context of the second
situation, in which more than ample room was available to avoid physical contact did the
first instance finally come in to focus. He pointed out that the post-event facts suggest
strongly that the "brushing" was deliberate (the talking and repeatedly looking at her by
Devonta and his friend), and the now-known collection of "vulgar" references to Ms.
Moye in the past by Devonta strongly suggested something other than mere mistake.

The district's counsel also argued that Devonta's prior involvement with sexually-related
offenses, when added to these instances strongly suggested that an alternate placement
would be highly appropriate, since Devonta needs to be held accountable for engaging in
repeated acts of inappropriate behavior.

**Devonta's counsel** began by pointing out that Devonta is a good and dependable young
man. He explained that in less than 24 hours, the family was able to collect a sheaf of
character reference letters that are being added to the hearing packet at tab 17. He
referred to Devonta's passion for athletics and his worry that an alternate placement
would remove the principal motivator for Devonta's academic work, since it would mean
Devonta would no longer be able to be on the various sports teams.

With regard to the incident itself, Devonta's attorney argued that while Ms. Moye was
certainly credible, so was Devonta. He insisted that it was possible that both were correct
– that Ms. Moye was, in fact, touched and that Devonta did so without even realizing it.
One scenario he offered was that the paper in Devonta's hand could have made contact
with Ms. Moye, meaning that both could be correct.

Counsel suggested that any number of other factors could explain a misperception by Ms.
Moye. These ranged from her newness in the classroom (and his argument that if she
were a fourth or fifth year teacher, we probably wouldn't be having this issue), to his
argument that she had been infrequently touched (such that any touching would strike her
as unusual) and included Devonta's size (over six feet tall) causing her to assign more
adult intentions to the actions of a fourteen year old boy.

MAY-22-2007 07:28          FRANCZEK SULLIVAN P C                    3129869672      P.07/10

. FROM :                          FAX NO. :8152304551          May. 22 2007 07:31AM P7

Devonta Davis
May 2, 2007 Hearing Report
Page 6

Counsel argued that there was no corroborating evidence to support Ms. Moye's account. No one saw the brushing occur. He points out that if Devonta were doing this on purpose, it would more likely than not have been done to "show off" for his friends. Since Ms. Moye denied that there was any outburst in the classroom after the contact, counsel argues that this establishes that it couldn't have been done to "show off."

Counsel also argued that because the students who submitted statements were not present and could not be cross-examined, the district was in danger of "convicting" Devonta on evidence that would never survive in a court of law. He insisted that Devonta had not said anything vulgar about his teacher whatsoever, that all of the purported statements attributed to Devonta by the other students amounted to Devonta observing that Ms. Moye was attractive, which counsel argued was a true statement.

**The administrative recommendation** is, in lieu of expulsion, to place Devonta in an alternative school setting for the remainder of the current school year and to have that alternate placement continue for the first semester of the 2007-2008 school year.

Devonta's attorney offered an alternative. He suggested that Devonta instead be directed to pursue counseling and evaluation. Although counsel believes that there is not a problem or issue with Devonta, he pointed out that counseling and evaluation would either confirm that opinion or correct something if it were found.

The hearing began at 10:27 am and concluded at 12:20 pm.

The **findings of fact** are as follows:

1. Devonta Davis is a student in Ms. Moye's 6th period computer class at Plainfield North High School.
2. On April 23, 2007, as Devonta was returning to his seat from the classroom printer, he passed by Ms. Moye.
3. Ms. Moye believes that as he passed, the back of Devonte's hand brushed across the lower portion of her buttocks.
4. Ms. Moye believes that Devonta touched her deliberately due to:
    a. the location of the touching
    b. the availability of four feet of clearance that could have avoided a touching
    c. the after-incident observation of Devonta and another student talking quietly and frequently looking up at her while doing so
    d. the statements of other students who report Devonta commenting on her looks and her buttocks
    e. a similar incident the prior week

MAY-22-2007 07:28    FRANCZEK SULLIVAN P C                3129869672    P.08/10

FROM :                          FAX NO. :8152304551          May. 22 2007 07:31AM P8

Devonta Davis
May 2, 2007 Hearing Report
Page 7

5. Devonta denies any recollection of there being any contact between him and Ms. Moye.
6. Devonta has been a District 202 student since 5th grade.
7. Devonta's high school discipline history is consists of 3 minor referrals and one for inappropriate language, which resulted in a three day out of school suspension.
8. Devonta's present semester grades consist of:
    a. Algebra – C
    b. Computer Applications – D+
    c. Health and Wellness – D
    d. French – D
    e. English – C
    f. Biology – D
9. There were no social work referrals and the only guidance visits have been for academic performance.
10. Devonta does not have an IEP.

Respectfully submitted:

*Mark C. Metzger*

Mark C. Metzger, Hearing Officer
May 4, 2007

MAY-22-2007 07:28    FRANCZEK SULLIVAN P C         3129869672    P.09/10

FROM :                    FAX NO. :8152304551     May. 22 2007 07:31AM P9

Devonta Davis
May 2, 2007 Hearing Report
Page 8

## APPENDIX

### Exhibits and Objections

Counsel for Devonta Davis offered objections to the submission and consideration of most of the tabbed exhibits submitted by the administration. I decided that the relaxed evidentiary rules permitted the submission and consideration of all of the documents submitted, but thought the following table may be of interest to the Board as it considers this case.

| Exhibit/Tab | Item | Objection |
|---|---|---|
| 1 | Biographical page | None |
| 2 | Board-requested summary page | Hearsay, not relevant and containing material prejudicial to Devonta that the Board should not consider. |
| 3 | Critical Incident Report | It fails to reflect that Devonta does not remember ever making contact with Ms. Moye. |
| 4 | Excerpt from school rules page of student handbook | Devonta does not recall receiving the book or signing for it. |
| 5 | Suspension letter | Ms. Brown never received it despite requests, but no objection to proceeding. |
| 6 | Notice of hearing letter | Ms. Brown never received it despite requests, but no objection to proceeding. |
| 7 | Student Referral Form | None |
| 8 | Dean Hudson's notes | None |
| 9 | Laura Moye's statement | None |
| 10 | Student Statement | Hearsay and the lack of an opportunity to cross examine the students. |
| 11 | Discipline History Report | Unfairly prejudicial to Devonta to consider prior acts; irrelevant in its inclusion of prior acts; unfair and prejudicial in including middle school items. |

MAY-22-2007  07:28        FRANCZEK SULLIVAN P C                3129869672      P.10/10

FROM :                            FAX NO. :8152304551           May. 22 2007 07:31AM  P10

Devonta Davis
May 2, 2007 Hearing Report
Page 9

| 12 | Transcript | Not relevant and opportunity for unfair prejudice due to a lack of high grades. |
|---|---|---|
| 13 | Grade reports for current semester | Same as #12 |
| 14 | Attendance report | Irrelevant and unfairly prejudicial. |
| 15 | Signed Receipt page from student handbook | Devonta doesn't remember signing it, but it is his signature. |
| 16 | Guidance and Social work referrals | Objection to the guidance report because it is not relevant and could be prejudicial; no objection to the social work report because there were no referrals. |

.-25-07   11:59AM   FROM-                                          T-818   P.002/002   F-196

## Plainfield Community Consolidated School District 202

We prepare learners for the future.

**Administration Center**
15732 Howard Street
Plainfield, IL 60544
www.learningcommunity202.org

(815) 577-4000 – main telephone
(815) 436-7824 – main fax

May 17, 2007

**EXHIBIT** B

Mrs. Brown
380 Richmond Dr.
Romeoville, IL 60446

CERTIFIED MAIL ~~Reed~~ picked up in person 5/17/07 By (Charlene Brown)

Re:   Devonte Davis

Dear Mrs. Brown:

As you know, the Board of Education met on May 14, 2007 to consider the administration's recommendation of expulsion regarding your child. At the Board of Education's meeting, the Board members reviewed the hearing officer's report and documents submitted during the hearing. After reviewing this information, the Board determined that your child had been inappropriate with one of his teachers.

As a result, the Board's decision, which is final, is expulsion for the remainder of the 2006-2007 school year and one (1) year expulsion for the 2007-2008 school year.

Sincerely,

Mark Heiss

Mr. Mark Heiss
Director of Administration and Personnel

MH/kb

CC:   Sharon Gronemeyer, Asst. Supt for Student Services